ELECTRONICALLY
FILED
Nov 01 2024
U.S. DISTRICT COURT
Northern District of WV

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

MARINA 1, LLC d/b/a CHEAT LAKE MARINA,

      **Plaintiff**,

v.

LAKE LYNN GENERATION, LLC and EAGLE
CREEK HYDRO OPERATIONS, LLC,

      **Defendants**.

**1:24-CV-103 (Kleeh)**
Civil Action No. _____
(Removal from the Circuit Court
of Monongalia County,
Civil Action No. 24-C-352)

## DEFENDANTS' NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1367, 1441(a), and 1446, Defendants Lake Lynn Generation, LLC ("Lake Lynn"), and Eagle Creek Hydro Operations, LLC ("ECHO") (collectively "Defendants"), by counsel, give notice of their removal of the above-captioned action from the Circuit Court of Monongalia County, West Virginia, to the United States District Court for the Northern District of West Virginia. In support thereof, Defendants state as follows:

### I. NATURE OF REMOVED ACTION

1. Plaintiff filed a Complaint in the Circuit Court of Monongalia County, West Virginia, Civil Action No. 24-C-352, asserting claims against Defendants under theories of strict liability, negligence, and breach of contract.

2. Plaintiff also seeks injunctive relief in the form of a temporary restraining order and preliminary injunction.

3. Service was effectuated upon Defendant on October 2, 2024, by the statutory authority vested in the Office of the West Virginia Secretary of State. Defendants received a copy

1

of Plaintiff's Complaint on or about October 8, 2024. Accordingly, this notice is timely filed within 30 days after receipt of the Complaint under 28 U.S.C. § 1446.

4.    Plaintiff alleges that, over the course of the summer of 2024, Defendants failed to comply with requirements of their Federal Energy Regulatory Commission ("FERC") issued license by allowing the water level of Cheat Lake to fall below the license mandated minimum level of 868 feet.[1]

5.    However, Plaintiff acknowledges that the reservoir water level issue at Cheat Lake arose from acute and severe drought conditions and the dam's simultaneous FERC operating requirements to maintain a minimum reservoir level and an outflow rate of 100 cfs into the Cheat River.[2]  As Plaintiff correctly observed, in part, "Defendants were . . . faced with a Hobson's choice of either increasing the flow through the spillway gates, lowering the water level and harming Plaintiff, or preventing harm to Plaintiff by following the required reservoir elevation level set forth in their permit, but allowing the flow to remain lower."[3] Plaintiff failed to include the other half of the purported "Hobson's" choice, wherein Defendants were simultaneously required to fulfill downstream environmental obligations to the fish and wildlife in the Cheat River north of the dam and flowing into the Commonwealth of Pennsylvania.

6.    Indeed, Plaintiff's Complaint merely alleges that when faced with historic drought conditions, the dam should have prioritized its "obligations" to Plaintiff by ensuring the lake level remained above its federally mandated minimum level, while simultaneously subordinating the needs of the downstream fish and wildlife to the needs of Plaintiff's commercial enterprise.[4]

---

[1] *See* Compl. at ¶¶ 7, 11, 19, 20, 25, 27, 33, 42, 56, 57, 62 (**Exhibit A**).

[2] *See* Compl. ¶¶ 16-21, 26.

[3] Compl. ¶¶ 17-19.

[4] *See* Compl. ¶¶ 16-22.

23947482.1

7.      More specifically, Lake Lynn operates a hydroelectric dam ("Lake Lynn Dam") located on Cheat Lake in Monongalia County, West Virginia. It is a FERC regulated entity and must operate in compliance with its FERC issued license.[5] At issue are three operational requirements imposed by Lake Lynn's license: First, the license requires that Cheat Lake be maintained at a water level between 868 feet to 870 feet during the months of May through October.[6] Second, Lake Lynn must maintain a flow rate of 212 cubic feet per second (cfs) into the Cheat River, with an "absolute minimum" of 100 cfs.[7] Third, the licensee must maintain a dissolved oxygen concentration of at least 5.0 milligrams per liter (mg/L) in the water leaving the dam.[8]

8.      The license further dictates "the minimum and maximum surface elevations may be temporarily modified if required by operating emergencies beyond the control of the Licensee, and for short periods for project maintenance purposes."[9]

9.      As the 2024 summer season progressed, Monongalia County began to experience "Severe (D2)" drought conditions.[10]

---

[5] *See* Order Issuing New License, 69 FERC 62, 253 [hereinafter FERC License] (**Exhibit B**).

[6] *See* FERC License at 18-19.

[7] *See* FERC License at 19. Pursuant to the FERC License, from the period of November 1 to March 31, the reservoir level must be between 857 feet to 870 feet.

[8] *See* FERC License at 21.  Note that there is not a direct 1:1 correlation between maintaining a minimum flow rate through the spillway gates and maintaining the required dissolved oxygenation requirements.  In some instances, an increased flowrate above the minimum is required to achieve the mandatory oxygenation requirements downstream.

[9] FERC License at 19.

[10] Drought Information, https://www.weather.gov/mhx/Drought (last visited Oct. 22, 2024); U.S. Drought Monitor, Monongalia County, WV, (Oct. 17, 2024) https://droughtmonitor.unl.edu/CurrentMap/StateDroughtMonitor.aspx?fips_54061 (**Exhibit C**); *see also* U.S. Drought Monitor, https://www.drought.gov/data-maps-tools/us-drought-monitor (last visited Oct. 22, 2024) ("The [U.S. Drought Monitor] uses a five-category system, labeled Abnormally Dry or D0, (a precursor to drought, not actually drought), and Moderate (D1), Severe (D2), Extreme (D3) and Exceptional (D4) Drought. Drought categories show experts' assessments of conditions related to dryness and drought

3

10.     As a result, on July 16, 2024, Lake Lynn was forced to seek approval for a temporary variance from FERC to allow it to reduce the minimum reservoir level of Cheat Lake from 868 feet to 865 feet in order to maintain its 100 cfs minimum flow rate and the 5.0 mg/L minimum dissolved oxygen concentration requirements.[11]

11.     In doing so, Lake Lynn prioritized the local environment and ecosystem over Lake Lynn's profitable energy generation.[12]

12.     On September 6, 2024, FERC requested additional information regarding Lake Lynn's Request for Variance.[13]    Lake Lynn's Request for Variance was withdrawn shortly thereafter on September 11, 2024, given the 2024 summer season had nearly ended (making the Request for Variance moot) and satisfying FERC's information request would require significant effort.[14]

13.     In all, and as a result of severe drought and the impossibility of complying with the competing, mandatory requirements under the FERC license, water levels deviated from the operating requirements from September 7, 2024, to September 27, 2024, reaching a low of 864.7

---

including observations of how much water is available in streams, lakes, and soils compared to usual for the same time of year.").

[11] *See* Request for Temporary Variance, FERC Accession Number 20240716-5112 at 1-2 [hereinafter Request for Variance] (**Exhibit D**).

[12] *See* Request for Temporary Variance, FERC Accession Number 20240911-5126 at 2 [hereinafter Request to Withdraw] ("Lake Lynn prioritizes complying with its license requirements over generation. Due to the continued low inflow into the . . . reservoir, Lake Lynn has not operated . . . resulting in lost generation since July 5, 2024, except for [approximately three days in August.]") (**Exhibit E**).

[13] *See* Additional Information Request, FERC Accession Number 20240903-3039 at 1, 3 (requesting, in part, the same information as FERC's prior May 21, 2024, additional information request issued in reference to Lake Lynn's ongoing relicensing application); *see also* Additional Information Request, FERC Accession Number 20240521-3018 at 1, A-3 (**Exhibit F**).

[14] *See* Request to Withdraw at 2-3.

ft (-3.3 feet below standards).[15] Dissolved oxygen levels fell below standards on three days, July 16, 2024, August 10, 2024, and October 2, 2024.[16]

14.     As of the time of writing, the water level of Cheat Lake is at 868.65 feet, above the required 868 feet minimum.[17]  As of the date of this filing, the wintertime lake mandatory elevation minimum of 857 feet is in effect, although Lake Lynn does not anticipate a drawdown to that permissive minimum, barring exigent circumstances.

15.     While Plaintiff comingles its allegations against Lake Lynn and ECHO as though they are inseparable parties or acted in concert with respect to the allegations set forth in Plaintiff's Complaint, Lake Lynn is the sole holder of the FERC hydroelectric license.  ECHO is the payroll entity that provides the employees that operate the Lake Lynn hydroelectric plant at the direction of Lake Lynn's management.

16.     ECHO joins in this Notice of Removal, however, as the face of Plaintiff's Complaint alleges strictly federal questions against ECHO, and, in the alternative, as this Court would have supplemental jurisdiction over any separate claim alleged against ECHO that would survive interpedently of Plaintiff's claims against Lake Lynn (of which there are none).

---

[15] *See* Notification of Reservoir Elevation Deviation, FERC Accession Number 20240927-5180 (summarizing the severe drought conditions Lake Lynn experienced in September 2024) (**Exhibit G**).

[16] *See* Notification of Deviation from Tailwater Dissolved Oxygen Standard, FERC Accession Number 20240719-5168 at 1-2 (detailing three periods of deviation on July 16, 2024, each lasting approximately ten minutes, reaching a low of 4.51 mg/L) (**Exhibit H**); Notification of Deviation from Tailwater Dissolved Oxygen Standard, FERC Accession Number 20240814-5102 at 1-2 (detailing two periods of deviation on August 8, 2024, each lasting approximately twenty minutes, reaching a low of 4.56 mg/L) (**Exhibit I**); Notification of Deviation from Tailwater Dissolved Oxygen Standard, FERC Accession Number 20241004-5098 at 1-2 (detailing one period of deviation on October 2, 2024, lasting approximately forty minutes, reaching a low of 4.29 mg/L) (**Exhibit J**).

[17] Cheat Lake Near Stewartstown, WV – 03071590, https://waterdata.usgs.gov/monitoringlocation/03071590/#parameterCode=62614&showMedian=true&startDT=2024-05-01&endDT=2024-10-22 (last visited October 31, 2024) (**Exhibit K**).

23947482.1

17.     As set forth herein, removal to this Court is appropriate as Plaintiff's Complaint asserts a federal question.

18.     Plaintiff admits that Lake Lynn faced conflicting operating requirements under its FERC license to simultaneously: (1) maintain the water level of Cheat Lake at a minimum level of 868 feet; and (2) maintain certain water quality standards for the water leaving the dam (i.e., a minimum flow rate and dissolved oxygen concentration).[18]

19.     Further, Plaintiff asserts that the alleged duty Lake Lynn owed to Plaintiff is established by its FERC license, i.e., federal law.[19]

20.     Indeed, Plaintiff was well aware of Lake Lynn's conflicting operating requirements and its *Request for a Temporary Variance* from the lake elevation requirements, and participated in the administrative proceeding surrounding that variance request.  On or around August 27, 2024, Plaintiff, as well as eighteen affiliated individuals and entities, filed identical "Comments in Objection" to Lake Lynn's *Request for Temporary Variance*.  **Exhibit L**.

21.     FERC has not issued any Violation with regard to the issues presented by Plaintiff in this lawsuit.

22.     At its core, this dispute must address what, if anything, Lake Lynn should have done differently when faced with conflicting operating requirements imposed by federal law and an inability to simultaneously comply with all three operating requirements due to undisputed *force majeure* conditions. Accordingly, this matter presents a federal question.

---

[18] *See* Compl. ¶¶ 16-21, 26.

[19] *See* Compl. ¶¶ 24, 29, 31, 39, 42, 43, 56, 57, 64.

23.     In accordance with 28 U.S.C. § 1446(a), a copy of the docket sheet and a copy of all process, pleadings, and orders served upon the Defendants in the state court action (aside from the Complaint attached as **Exhibit A**) are attached hereto as **Exhibit M**.

## II. TIMELINESS OF REMOVAL

1.     The Secretary of State received a copy of the summons and Complaint on October 2, 2024, which was received by Defendants' registered agent for service of process, Corporation Service Company, on October 8, 2024.

2.     As such, the beginning date for purposes of counting the days for the filing of notice of removal was October 8, 2024, and removal is timely. *See Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 391 (4th Cir. 2018) ("The general rule, as established by the Supreme Court in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999), is that the time for counting the days for filing notice of removal under § 1446(b) starts when the defendant is formally served with the summons and complaint making the defendant an official party to the action and requiring the defendant to appear."). *See also*, *Lilly v. CSX Transp., Inc.*, 186 F. Supp. 2d 672, 673-75 (S.D.W. Va. 2002) (cited to in support of the Fourth Circuit's ruling in *Elliott*, *supra*, and holding that "The court is persuaded by the reasoning in the cases following the majority view and finds that, where service of process is effected on a statutory agent, the time for removal does not begin to run until the defendant has actually received a copy of the process.")

3.     Nevertheless, and for the avoidance of any doubt, this *Notice of Removal* is being filed within 30 days of the West Virginia Secretary of State's receipt of Plaintiff's Complaint on behalf of Defendants.

4.     Removal is therefore timely.

## III. PROPRIETY OF VENUE

1.      Venue is proper in this district and division under 28 U.S.C. § 1441(a), because the state court where the suit has been pending (the Circuit Court of Monongalia County, West Virginia) is located in this district and this division.

### IV. BASIS OF REMOVAL

1.      Removal in this case is proper pursuant to 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

2.      In this case, federal jurisdiction is founded upon the existence of a federal question pursuant to 28 U.S.C. § 1331, as this civil action involves questions under the laws of the United States.

3.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this action presents federal questions under the Federal Power Act ("FPA") and implicates federal preemption established by those statutes over all matters related to the regulation, operation, and development of hydroelectric dams upon the navigable waters of the United States.[20]

4.      The face of Plaintiff's Complaint asserts claims for strict liability, negligence, and breach of contract under West Virginia law, but in reality, asserts a federal question.[21]

---

[20] *See California v. FERC*, 495 U.S. 490, 496 (1990) ("In the Federal Power Act of 1935, 49 Stat. 863, Congress clearly intended a broad federal role in the development and licensing of hydroelectric power."); *see also* 16 U.S.C. § 797(e) (enabling FERC to issue, and place conditions upon, licenses in the interest of developing hydroelectric power); 16 U.S.C. § 825l(a) (providing that a party aggrieved by a FERC order must seek a rehearing before FERC to adjudicate that issue); *Linthicum v. FERC*, No. 1:23-cv-00834-AA, 2023 U.S. Dist. LEXIS 143226, at *13 (D. Or. Aug. 16, 2023) (quoting *California Trout v. FERC*, 572 F.3d 1003, 1013 (9th Cir. 2009)) ("Section 825l(b) 'enumerates the specific, complete and *exclusive* mode for judicial review of the Commission's orders,' and 'a non-party to the Commission's proceedings may not challenge the Commission's final determination in any court.') (emphasis added). *But see* 16 U.S.C. § 821 (exempting from the FPA certain state law water rights which are not at issue here).

[21] *See* Compl. ¶¶ 23-29, 30-37, 38-43.

5.     According to Plaintiff, "[a]s a result of the lowered water level, Plaintiff's docks have been slowly pulling away from their land mounts, causing irreparable damage."[22]

6.     Further, Plaintiff notes that, "[b]ecause other individuals are unable to use their own docks and other public docks, they have used, and in doing so damaged, the Plaintiff's docks."[23]

7.     Plaintiff asserts that the water level requirement imposes strict liability "for any harm caused as a result of their failure to comply with their FERC license requirements."[24]

8.     As to negligence, Plaintiff claims that "Defendants have a duty, according to its FERC license requirements, to keep the water level elevation no lower than 868 feet . . . . Defendants breached that duty by lowering, or allowing the water level to be lowered, below the minimum required elevation without FERC approval and by failing to adequately support and maintain their equipment."[25]

9.     Finally, in its breach of contract claim, Plaintiff contends that, "as a business owned and operated on or around Cheat Lake[,] [Plaintiff] is a third-party beneficiary of such permit in that any action taken by Defendants directly affects Plaintiff . . . . Defendants, by lowering the water level of Cheat Lake below the required 868 feet elevation, breached their permit."[26]

**A.     Federal Question Jurisdiction**

1.     A "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Old Dominion Elec.*

---

[22] Compl. ¶ 49.

[23] Compl. ¶ 48.

[24] Compl. ¶ 29.

[25] Compl. ¶¶ 31, 33.

[26] Compl. ¶¶ 41-42.

23947482.1

*Coop. v. PJM Interconnection, LLC*, 24 F.4th 271, 280 (4th Cir. 2022) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).

**I.    Plaintiff's Complaint necessarily raises a federal question because each claim asserted relies on federal law to establish state-law liability.**

1.    As the Fourth Circuit has explained, a federal issue is necessarily raised when it is a "'necessary element of one of the well-pleaded state claims.'" *Burrell v. Bayer Corp.*, 918 F.3d 372, 381 (4th Cir. 2019). "This rule, which is the first step to ascertaining federal question jurisdiction, is known as the well-pleaded complaint rule." *Capitol Broad. Co. v. City of Raleigh*, 104 F.4th 536, 540 (4th Cir. 2024) (citation omitted).

2.    As conceded in the Complaint, Lake Lynn operates the Lake Lynn Dam pursuant to a FERC issued license.[27]

3.    Lake Lynn Dam, located in Monongalia County, West Virginia, is licensed to operate via an order issued by FERC on December 27, 1994.[28]

4.    The FPA and its accompanying regulations establish a comprehensive scheme of federal regulation which confers upon FERC exclusive jurisdiction over hydroelectric dams. *See California v. FERC*, 495 U.S. 490, 496, 499 (1990) ("In the Federal Power Act . . . Congress clearly intended a broad federal role in the development and licensing of hydroelectric power."); *First Iowa Hydro-Electric Coop. v. Fed. Power Com.*, 328 U.S. 152, 164 (1946); 16 U.S.C. § 797(e) (vesting FERC with authority to issue licenses for hydroelectric projects); 16 U.S.C. 803 (authorizing FERC to, in its discretion, place conditions on licenses it issues).

---

[27] *See* Compl. ¶ 7; FERC License at 35.

[28] *See* FERC License at 1.

23947482.1

5.     FERC, by and through its licensure process and continuing regulatory oversight, maintains standards and limits on various aspects of Lake Lynn's operations, such as the water level, flow rate, and oxygen concentration requirements at issue.[29]

6.     Importantly, balancing the interests of power generation and environmental quality is specifically tasked to FERC.[30]

7.     Plaintiff concedes that the reduction of Cheat Lake's water level—the source of its alleged injury—was done in order to maintain the "absolute minimum" flow rate of 100 cfs into the Cheat River, set in place by the FERC license.[31]

8.     Critically, Plaintiff points to the FERC license—federal law—as the source of duty and breach from which its claims arise.[32] Because these necessary elements are established and controlled by federal law, a federal question is created.[33]

9.     In a strikingly similar case, *Funderburk v. South Carolina Electric & Gas Co.*, 179 F. Supp. 3d 569, 579 (D.S.C. 2016), the District Court for the District of South Carolina came to

---

[29] *See* FERC License at 18-21.

[30] *See* 16 U.S.C. § 797(e) (requiring FERC to consider energy and environmental interests); 16 C.F.R. § 4.61 (requiring license applicants to provide reports assessing environmental impact, among other things); 18 C.F.R. § 12.4 (permitting FERC to place conditions on a license "with respect to the design, construction, operation, maintenance, repair, use, or modification of the project . . ."); *see also California v. FERC*, 495 U.S. 490, 499 (1990) ("By directing FERC to consider the recommendations of state wildlife and other regulatory agencies while providing FERC with final authority to establish license conditions (including those with terms inconsistent with the States' recommendations), Congress has amended the FPA to elaborate and reaffirm *First Iowa*'s understanding that the FPA establishes a broad and paramount federal regulatory role.").

[31] *See* Compl. ¶¶ 16-19, 27; FERC License at 19.

[32] *See* Compl. ¶¶ 29, 31, 39, 41, 42.

[33] *See Paxton v. Ga. Power Co*, No. 4:22-cv-00081-TES, 2022 U.S. Dist. LEXIS 229939, at *22 (M.D. Ga. Dec. 21, 2022) (concluding that a state law claim based upon a duty imposed by federal law necessarily raises a federal question); *Bonin v. Sabine River Auth. of Tex.*, No. 1:17-cv-134, 2018 U.S. Dist. LEXIS 38112, at *21 (E.D. Tex. Feb. 8, 2018) (same) ("Accordingly, establishing a duty for the Plaintiffs' state law negligence claim against the Entergy Defendants necessarily raises a federal issue of the duty imposed on the Defendants by FERC."); *Funderburk v. S.C. Elec. & Gas Co.*, 179 F. Supp. 3d 569, 579 (D.S.C. 2016) (same).

a near identical conclusion:

> Plaintiffs have not identified any source for the duty of care owed by SCE&G to properly manage and operate the Lake Murray Dam other than a "license" and governmental regulations." However, under the artful pleading doctrine, a plaintiff may not defeat removal by omitting necessary federal questions. In this case, Plaintiffs' attempt to avoid reference to federal law through artful pleading is not compelling since the FERC "set[s] the appropriate duty of care for dam operators."

(quoting *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 476 (5th Cir. 2013))[34].

10.     Here, by disclaiming any federal basis for its claims, Plaintiff makes a similar attempt to avoid federal question jurisdiction.[35]

11.     First, it must be resolved which of Lake Lynn's FERC imposed operational requirements, if any, take precedence in a scenario where Lake Lynn is forced to prioritize certain water quality standards over others due to severe drought. Once settled, a second question must be addressed, whether Lake Lynn's conduct was reasonable in light of those operating requirements. As the Fifth Circuit has explained, the appropriate duty of care for dam operators is established by the FERC license. *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 476 (5th Cir. 2013) ("FERC, not state tort law, must set the appropriate duty of care for dam operators.").

12.     As such, Plaintiff's claims are based upon Lake Lynn's best attempts to navigate incompatible FERC license operational requirements; necessarily creating an issue of federal law

---

[34] Plaintiff's negligence-based claims in the *Funderburk* case were similar to those lodged by Plaintiff in this case, and included "a. in failing to properly maintain water levels; b. in failing to properly check water levels; c. in failing to properly lower water levels in face of impending rain; d. in failing to warn; e. in failing to properly maintain the lake; f. in failing to properly manage the lake; g. in failing to properly anticipate water levels; h. in failing to comply with applicable regulations; i. in failing to comply with generally accepted lake management standard[s]; h. in opening three flood gates at one time when such opening was not or would not have not been necessary if proper management practices had been followed; and k. in overacting once Defendant learned it had not properly managed the lake." *Funderburk*, 179 F. Supp. 3d at 578.

[35] *See* Compl. at 2 n.2 ("Plaintiff['s] claim for damages is not based on [f]ederal law and for the purposes of this Complaint Plaintiff conditionally waives any federal law claims.").

12

23947482.1

subject to the oversight, authority, and jurisdiction of FERC.

**II.    The federal issue is "actually in dispute" because the parties disagree as to which of the competing FERC requirements should be prioritized.**

1.      In this context, as the District Court for the Middle District of Georgia observed, "[c]ourts that have previously decided this requirement make short work of it[,]" characterizing it as a "simple and straightforward" analysis, usually dispatched in a few sentences. *Paxton v. Ga. Power Co.*, No. 4:22-cv-00081-TES, 2022 U.S. Dist. LEXIS 229939, at \*24 (M.D. Ga. Dec. 21, 2022) (first discussing *Carrington v. City of Tacoma*, 276 F. Supp. 3d 1035, 1041 (W.D. Wash. 2017); and then discussing *Funderburk v. S.C. Elec. & Gas Co.*, 179 F. Supp. 3d 569, 579 (D.S.C. 2016)).

2.      Here, that analysis is also simple. As previously mentioned, Plaintiff asserts that Lake Lynn breached a duty imposed by FERC to maintain the lake at the 868-foot minimum by fulfilling its other duties imposed by FERC to maintain the outflow of the dam at 100 cfs and the dissolved oxygen concentration above 5.0 mg/L, and that Plaintiff is therefore damaged.[36]

3.      Accordingly, this matter presents an "actually disputed" federal question.

**III.   The federal issue at stake is substantial because its resolution impacts FERC's exclusive authority to regulate matters assigned to it by Congress.**

1.      "The meaning of the FERC license is a substantial and 'important issue of federal law that sensibly belongs in a federal court.'" *Va. Timberline, LLC v. Appalachian Power Co.*, Civil Action No. 4:06-cv-00026, 2006 U.S. Dist. LEXIS 52156, at \*5 (W.D. Va. July 13, 2006) (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005)).

2.      By attempting to have this Court or a jury determine whether Lake Lynn adequately complied with the requirements of the FERC license, Plaintiff engages in an impermissible

---

[36] *See* Compl. ¶¶ 16-22, 27.

collateral attack on FERC's certification and regulatory authority.

3.     Various circuit courts have concluded that state law claims which transgress upon FERC's exclusive authority disrupt the balance of federal power and impair FERC's ability to properly regulate affairs within its purview.[37]

4.     In *County of Halifax ex. rel. Board of Supervisors v. Lever*, 718 F.2d 649, 651 (4th Cir. 1983), Plaintiffs demanded that a developer who had been granted a FERC license to construct a hydroelectric dam "relinquish all their rights obtained" under their license. *Id.* Plaintiffs participated in prior FERC proceedings, but instead of requesting a rehearing before FERC, filed a suit in district court, asserting that the developers had obtained their license by fraudulent means and requesting the license be revoked. *Id.* The developers sought dismissal, which the district court denied. *Id.* The Fourth Circuit reversed, concluding that Plaintiffs should have exhausted their administrative remedies before seeking relief in federal court, as FERC has exclusive jurisdiction

---

[37] *See Cnty. of Halifax ex rel. Bd. of Supervisors v. Lever*, 718 F.2d 649, 654 (4th Cir. 1983) ("By no form of improvisation could the District Court in this action in effect invalidate or rescind action by the Commission in a matter which Congress has committed to its exclusive jurisdiction. Yet that is precisely what the District Court has attempted to do in its indirect way by a mandatory injunction."); *see also Adorers of the Blood of Christ U.S. Province v. Transcon. Gas Pipe Line Co. LLC*, 53 F.4th 56, 64 (3d Cir. 2022) (collecting cases) ("No matter the specific language employed by our various sister courts of appeals to describe the analysis, in answering the question of whether a claim is an impermissible collateral attack, they each focus their attention not on the plaintiffs' characterization of their claim but rather on whether the claim 'could and should have' been presented to FERC because the claims raise 'issues inhering in the controversy.'") (citation omitted); *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1284 (11th Cir. 2014) (concluding that a party's claim is an impermissible collateral attack upon a FERC order when adjudication of the claim would require the court to review any issues "inescapably intertwined" with the earlier FERC certification process); *Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602, 605 (6th Cir. 2010) (concluding that a claim is an impermissible collateral attack when the "heart of the claim" was bound up in the operation of the pipeline, which was authorized by FERC's certificate); *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1188 (9th Cir. 2022) (quoting *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912 (9th Cir. 1989)) ("'Rather than accept plaintiffs' characterization of their challenges, we determined that we had to look at the essence of plaintiffs' claims in deciding whether they challenged the FERC license. We held that the action challenged the FERC license because 'the practical effect of the action in district court [was] an assault on an important ingredient of the FERC license.'").

over such matters, and that the district court did not have jurisdiction to modify a FERC license. *Id.* at 652, 54. The Fourth Circuit went on to explain that plaintiff's tort claim, in reality, was an attempt to have the district court regulate "a matter which Congress has committed to [FERC's] exclusive jurisdiction." *Id.* at 654.

5.      Likewise, in *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1278 (11th Cir. 2014), in a relicensing proceeding before FERC, Plaintiffs, as intervenors, requested that a hydroelectric dam maintain more stable water levels to better facilitate recreational use of the lake. However, FERC declined to impose such a requirement, finding that it would not be in the overall public interest to do so. *Id.* After FERC declined Plaintiffs' request for rehearing, Plaintiffs sought to hold the dam liable for "unreasonably decreased lake levels" which preventing Plaintiffs from enjoying their property. *Id.* The matter was removed to federal court, where the district court concluded Plaintiffs had mounted an impermissible collateral attack on FERC's authority. On appeal, the Eleventh Circuit affirmed, concluding that Plaintiffs could not dodge FERC's agency process for another, perhaps more favorable, forum. *Id.* at 1281.

6.      Similarly, here, Plaintiff's concerns regarding Cheat Lake's water level are an attack on FERC's license to Lake Lynn and its own interpretation of how Lake Lynn was to comply with its competing operational requirements in the face of a severe drought.  Those questions rest within the province of FERC—the entity Congress empowered to balance the interests at stake.

7.      As detailed above, Plaintiff's claims transgress on the authority of FERC, and in so doing, present a substantial issue of federal law.

**IV.    This matter is capable of resolution in federal court without disrupting the federal-state balance because Congress has intended federal law to occupy the field in this area.**

1.      "In determining whether finding jurisdiction would disturb the balance of federal

15

and state judicial responsibilities, the Court must consider whether exercising jurisdiction would 'herald an enormous shift of traditionally state cases into federal courts.'" *Bd. of Comm'rs of the Se. La. Flood Prot. Auth.-East v. Tenn. Gas Pipeline Co., LLC*, 29 F. Supp. 3d 808, 847 (E.D. La. 2014) (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 319 (2005)).

2.     As previously discussed, FERC is tasked with balancing the various interests at stake, therefore, this matter presents a federal question that imputes the authority of FERC over such issues.

3.     At its core, this dispute must address what, if anything, Lake Lynn should have done differently when faced with conflicting operating requirements imposed by federal law. Accordingly, this matter presents a federal question.

**V.     Because Plaintiff's claims point to Lake Lynn's FERC license as a basis for state law liability, this matter is distinguishable from cases where FERC regulated entities could not establish federal question jurisdiction.**

1.     Some cases have refused federal question jurisdiction when the Complaint refers to FERC but does not use the license as a basis of liability.

2.     Such matters typically turn on the language of the complaint and the relationship of necessity between the federal issue and the state law claim. "[F]ederal-question jurisdiction depend[s] on the district court's case-by-case appraisal of the . . . of the federal question asserted as an element of the state tort." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 817 (1986).

3.     In a factually different matter regarding a FERC regulated entity, the Northern District of West Virginia found that federal question jurisdiction was not present: "First, the complaint's mere mention of Rover's FERC filing and the NGA cannot operate to confer federal question jurisdiction on this Court." *Bowyer v. Rover Pipeline, Ltd. Liab. Co.*, No. 1:16CV203, 2017 U.S. Dist. LEXIS 8892, at *10 (N.D.W. Va. Jan. 23, 2017). However, the matter at hand is

distinct. Here, the Complaint makes more than "mere mention" of the FERC license; in fact, the Complaint directly alleges that its claims are based upon operating requirements imposed by the FERC license. *See* Compl. ¶¶ 24, 29, 31, 39, 42, 43, 56, 57, 64.

4. In another case, *White v. Santa Clara Valley Water District*, No. 20-cv-04242-VKD, 2020 U.S. Dist. LEXIS 209624, (N.D. Cal. Nov. 9, 2020), the District Court for the Northern District of California concluded that it lacked subject matter jurisdiction over a removal. In determining that it lacked federal question jurisdiction the court wrote: "As noted above, there is no negligence claim at issue in the present action, and the District does not dispute plaintiffs' assertion that the FERC order it submitted does not grant a license with respect to the Dam, but instead provides the District with an exemption from the FPA, including licensing." *Id.* at *29. In other words, unlike similar cases where a dam-operator was allowed to remove based upon a FERC license, in *White*, the plaintiff did not assert duties related to the dam's operation under a FERC license. *Id.* Further, the court noted that the dam-operator defendant was not operating pursuant to a FERC license, but an exemption from FERC licensure. *Id.* The matter before this Court is different, as already discussed, Plaintiff's claims are explicitly founded upon the operating requirements imposed by a lawfully issued FERC license, pursuant to federal law. *See* Compl. ¶¶ 24, 29, 31, 39, 42, 43, 56, 57, 64.

5. In, *Mich. Department of Environment, Great Lakes, & Energy v. STS Hydropower*, LLC, 609 F. Supp. 3d 552, 556 (W.D. Mich. 2022), the District Court for the Western District of Michigan held that federal question jurisdiction was not appropriate in a suit brought by state agencies against a dam-operator, alleging the dam operator had caused environmental harm during a drawdown of a lake in order for the operator to repair its dam. Again, the dam-operator was issued an exemption from FERC licensing. *Id.* at 559. The district court concluded that plaintiff's

claims for conversion, trespass, and nuisance were not necessarily tied to a federal issue because the claims did not allege a violation of a FERC license. Instead, the claims in this case were rooted, in part, in the Michigan Natural Resources and Environmental Protection Act and the operator's failure to obtain a permit under that Act, despite being given a FERC variance prior to the drawdown. Therefore, those claims were not aimed at enforcing provisions of the FPA and FERC's regulations. *Id.* at 559-60. The *STS Hydropower* court compared the matter before it to *Sherr v. South Carolina Electric & Gas Co.*, 180 F. Supp. 3d 407, 417 (D.S.C. 2016), where a district court found federal question jurisdiction proper. As with the instant case, the key issue providing federal jurisdiction was Plaintiff's reliance on the FERC license. *See Sherr*, at 417-20.

6.      Here, like the cases finding federal jurisdiction, Plaintiff's claims point to a FERC license as the basis for liability. "Permitting such state property damage claims in an attempt to force changes to a FERC-issued license would 'constitute a veto of the project that was approved and licensed by FERC.'" *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 477 (5th Cir. 2013) (quoting *California v. FERC*, 495 U.S. 490, 507 (1990)). In dicta, the *Simmons* court entertained the idea that a state law property claim could be pursued against FERC regulated entities that are in violation of their license. *Id.* However, here, the *Simmons* dicta is irrelevant as Plaintiff concedes that Lake Lynn was complying with the portion of its FERC license regarding minimum outflow from the dam.[38]

7.      For the reasons set forth above, this matter presents a federal question, and removal to this Court is proper.

---

[38] Further, such claims constitute an impermissible collateral attack on FERC's exclusive jurisdiction. *See* Section IV.A.3 herein.

### V. OTHER REMOVAL ISSUES

1.      Assuming the Court concludes that a federal question is presented as to any claim, the Court is vested with supplemental jurisdiction as to all remaining claims.[39]

2.      Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon the Defendants (aside from the Complaint attached as **Exhibit A**) is attached hereto as "**Exhibit M**" along with a copy of the docket sheet from the Circuit Court of Monongalia County, West Virginia.

3.      A Notice of Filing of Notice of Removal will be filed this day with the Circuit Clerk of Monongalia County, West Virginia and served on the Plaintiff.

WHEREFORE, Defendants, by counsel, respectfully advise that this civil action has been removed from the Circuit Court of Monongalia County, West Virginia, to the United States District Court for the Northern District of West Virginia, and that this Court shall assume jurisdiction over this action.

---

[39] *See, e.g., Cantwell v. S.C. Elec. & Gas Co.*, No. 3:15-cv-4694-JMC, 2016 U.S. Dist. LEXIS 50800, at *28-29 (D.S.C. Apr. 15, 2016) ("As discussed above, because Plaintiff's negligence claim involves federal issues under the FPA as it relates to the FERC, the court has original jurisdiction over this action under 28 U.S.C. § 1331 . . . Additionally, the court finds it appropriate to exercise supplemental jurisdiction over Plaintiff's claims for inverse condemnation, trespass, and strict liability. 28 U.S.C. § 1367(a) ('[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same or controversy under Article III of the United States Constitution'); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("Supplemental jurisdiction allows parties to append state law claims over which federal courts would otherwise lack jurisdiction to federal claims, so long as '[t]he state and federal claims . . . derive from a common nucleus of operative fact.')").

23947482.1

**LAKE LYNN GENERATION, LLC and EAGLE CREEK HYDRO OPERATIONS, LLC,**

**By Counsel**

*/s/R. Mitch Moore*

Brian D. Gallagher (W. Va. Bar # 6592)
R. Mitch Moore (W. Va. Bar # 13659)
Steptoe & Johnson PLLC
1000 Swiss Pine Way, Suite 200
Morgantown, WV 26501
Telephone:     (304) 598-8000
Facsimile:     (304) 598-8116
Mitch.Moore@steptoe-johnson.com

Michael D. Mullins (W. Va. Bar #7754)
Steptoe & Johnson PLLC
Eight Floor, Chase Tower
P.O. Box 1588
Charleston, WV 25326
Telephone:     (304) 353-8000
Facsimile:     (304) 353-8180
*Counsel for Defendants*

23947482.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**


**MARINA 1, LLC d/b/a CHEAT LAKE MARINA,**

        **Plaintiff**,

**v.**

**LAKE LYNN GENERATION, LLC and EAGLE CREEK HYDRO OPERATIONS, LLC,**

        **Defendants**.

**Civil Action No. _____
(Removal from the Circuit Court
of Monongalia County,
Civil Action No. 24-C-352)**


## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2024 I electronically filed the foregoing ***"Notice of Removal"*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record, provided they are CM/ECF participants. In addition, I have further mailed complete copies of these filings to counsel below via First Class US Mail:

        Mark A. Kepple (WV Bar #7470)
        Bailey & Wyant, P.L.L.C.
        1219 Chapline Street
        Wheeling, WV 26003
        *Counsel for Plaintiff*


        */s /R. Mitch Moore* _____

21

# Exhibits

| Ex. | Description |
| --- | --- |
| A | Complaint |
| B | FERC License |
| C | U.S. Drought Monitor, Monongalia County, WV – October 17, 2024 |
| D | Request for Variance |
| E | Request to Withdraw |
| F | Additional Information Request - September 3, 2024 |
| G | Notification of Reservoir Elevation Deviation - September 27, 2024 |
| H | Notification of Deviation from Tailwater Dissolved Oxygen Standard – July 19, 2024 |
| I | Notification of Deviation from Tailwater Dissolved Oxygen Standard – August 14, 2024 |
| J | Notification of Deviation from Tailwater Dissolved Oxygen Standard – October 4, 2024 |
| K | Cheat Lake Water Level Data – May 1, 2024 to October 31, 2024 |
| L | Comments in Objection to Lake Lynn's Request for Temporary Variance |
| M | Record of the Circuit Court of Monongalia County |

23947482.1