**SUMMONS**

**EXHIBIT A**

E-FILED | 9/30/2024 11:58 AM
CC-31-2024-C-352
Monongalia County Circuit Clerk
Donna J. Hidock

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA
### Marina 1, LLC v. Lake Lynn Generation, LLC

Service Type:    Secretary of State - Certified - Including Copy Fee

NOTICE TO:    Lake Lynn Generation, LLC, c/o Corporation Service Company, 209 West Washington Street, Charleston, WV 25302

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Mark Kepple, 1219 Chapline St, , Wheeling, WV 26003

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

9/30/2024 11:58:27 AM                      /s/ Donna J. Hidock
_____              _____
Date                                             Clerk

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on    _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____
_____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling place or usual place of abode to
_____ , a member of the individual's family who is above the age of sixteen (16) years and by

advising such person of the purpose of the summons and complaint.

☐ Not Found in Bailiwick

_____              _____
Date                                             Server's Signature

# SUMMONS

E-FILED | 9/30/2024 11:58 AM
CC-31-2024-C-352
Monongalia County Circuit Clerk
Donna J. Hidock

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA
## Marina 1, LLC v. Lake Lynn Generation, LLC

Service Type:    Secretary of State - Certified - Including Copy Fee

NOTICE TO:    Lake Lynn Generation, LLC, c/o Corporation Service Company, 209 West Washington Street, Charleston, WV 25302

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Mark Kepple, 1219 Chapline St, , Wheeling, WV 26003

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

| 9/30/2024 11:58:27 AM | /s/ Donna J. Hidock |
|---|---|
| Date | Clerk |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling place or usual place of abode to _____ , a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purpose of the summons and complaint.

☐ Not Found in Bailiwick

| _____ | _____ |
|---|---|
| Date | Server's Signature |

# SUMMONS

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA
## Marina 1, LLC v. Lake Lynn Generation, LLC

Service Type:    Secretary of State - Certified - Including Copy Fee

NOTICE TO:    Lake Lynn Generation, LLC, c/o Corporation Service Company, 209 West Washington Street, Charleston, WV 25302

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Mark Kepple, 1219 Chapline St, , Wheeling, WV 26003

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

| 9/30/2024 11:58:27 AM | /s/ Donna J. Hidock |
|---|---|
| Date | Clerk |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling place or usual place of abode to _____, a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purpose of the summons and complaint.

☐ Not Found in Bailiwick

| _____ | _____ |
|---|---|
| Date | Server's Signature |

# SUMMONS

E-FILED | 9/30/2024 11:58 AM
CC-31-2024-C-352
Monongalia County Circuit Clerk
Donna J. Hidock

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA
### Marina 1, LLC v. Lake Lynn Generation, LLC

Service Type:     Secretary of State - Certified - Including Copy Fee

NOTICE TO:   Eagle Creek Hydro Operations, LLC, c/o Corporation Service Company, 209 West Washington Street, Charleston, WV 25302

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Mark Kepple, 1219 Chapline St, , Wheeling, WV 26003

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

| 9/30/2024 11:58:27 AM | /s/ Donna J. Hidock |
|---|---|
| Date | Clerk |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling place or usual place of abode to _____, a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purpose of the summons and complaint.

☐ Not Found in Bailiwick

| _____ | _____ |
|---|---|
| Date | Server's Signature |

# SUMMONS

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA
### Marina 1, LLC v. Lake Lynn Generation, LLC

Service Type:    Secretary of State - Certified - Including Copy Fee

NOTICE TO:   Eagle Creek Hydro Operations, LLC, c/o Corporation Service Company, 209 West Washington Street, Charleston, WV 25302

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Mark Kepple, 1219 Chapline St, , Wheeling, WV 26003

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

| 9/30/2024 11:58:27 AM | /s/ Donna J. Hidock |
|---|---|
| Date | Clerk |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling place or usual place of abode to _____ , a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purpose of the summons and complaint.

☐ Not Found in Bailiwick

| _____ | _____ |
|---|---|
| Date | Server's Signature |

# SUMMONS

E-FILED | 9/30/2024 11:58 AM
CC-31-2024-C-352
Monongalia County Circuit Clerk
Donna J. Hidock

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA
### Marina 1, LLC v. Lake Lynn Generation, LLC

Service Type:    Secretary of State - Certified - Including Copy Fee

NOTICE TO:    Eagle Creek Hydro Operations, LLC, c/o Corporation Service Company, 209 West Washington Street, Charleston, WV 25302

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY:

Mark Kepple, 1219 Chapline St, , Wheeling, WV 26003

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

SERVICE:

| 9/30/2024 11:58:27 AM | /s/ Donna J. Hidock |
|---|---|
| Date | Clerk |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____

☐ I certify that I personally delivered a copy of the Summons and Complaint to the individual's dwelling place or usual place of abode to _____ , a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purpose of the summons and complaint.

☐ Not Found in Bailiwick

| _____ | _____ |
|---|---|
| Date | Server's Signature |

EFILED 9/30/2024 11:58 AM
CC-31-2024-C-352
Monongalia County Circuit Clerk
Donna J. Hidock

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

**MARINA 1, LLC d/b/a CHEAT LAKE MARINA**

       **Plaintiff,**

**v.**                                            **Civil Action:**

**LAKE LYNN GENERATION, LLC and
EAGLE CREEK HYDRO OPERATIONS, LLC,**
       **Defendant.**

### COMPLAINT AND PETITION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**COMES NOW** the Petitioner, Marina 1, LLC ("Cheat Lake Marina,") by and through undersigned counsel Mark A. Kepple, Esq. and the law firm of Bailey & Wyant, PLLC, and for its Complaint against Defendant and pursuant to WVRCP Rule 65(a) and (b) petitions this Court to issue a preliminary injunction and temporary restraining order against Respondents Lake Lynn Generation, LLC ("Lake Lynn") and Eagle Creek Hydro Operations, LLC ("Eagle Creek") prohibiting them from lowering the water reservoir elevation level of Cheat Lake any further for the reasons stated herein.

### PARTIES

1.      Marina 1, LLC d/b/a Cheat Lake Marina (hereinafter "Plaintiff") is a West Virginia Limited Liability Company authorized to do business in the state of West Virginia.

2.      Lake Lynn Generation, LLC (hereinafter "Defendants") is a Delaware chartered Limited Liability Company authorized to do business in Monongalia, West Virginia.

3.      Eagle Creek Hydro Operations, LLC (hereinafter "Defendants") is a Delaware chartered Limited Liability Company authorized to do business in Monongalia, West Virginia.

1

**VENUE AND JURISDICTION**

4.      This Court has subject matter jurisdiction over the claims made by Plaintiff pursuant to West Virginia Code § 51-2-2.

5.      This Court has personal jurisdiction over Defendants because they were conducting business in the State of West Virginia and caused injuries to Plaintiff in the State of West Virginia by acts and/or omissions committed in the State of West Virginia.

6.      Venue is proper in this Court pursuant to W. Va. Code § 56-1-1 in that all material acts described occurred in Monongalia County, West Virginia and Plaintiff 's causes of action arose in Monongalia County, West Virginia.

**STATEMENT OF FACTS**

7.      At all times relevant hereto, Defendants were required under their license permit with the Federal Energy Regulatory Commission ("FERC")[1] to keep the Cheat Lake water level at an elevation of no lower than 868 feet. *See* Exhibit A.

8.      On July 16, 2024, Defendants submitted an application with FERC seeking a temporary variance from this requirement to allow a minimum elevation of 865 feet instead of the minimum 868 feet. *See* Exhibit B.

9.      On August 22, 2024, Plaintiff filed an intervention with FERC in opposition of Defendants' application. *See* Exhibit C.

10.      Throughout the end of July and the whole month of August, multiple individuals also submitted comments opposing Dependents' application for temporary variance citing the drastic affects it would have on the lake, recreational use of the lake, and surrounding businesses.

---

[1] Plaintiffs claim for damages is not based on Federal law and for the purposes of this Complaint Plaintiff conditionally waives any federal law claims.

11.     The week before Labor Day weekend, Defendants lowered the water level of Cheat Lake below the required minimum of 868 feet in violation of their FERC license requirements.

12.     Defendants assert that the gauge they use to monitor the water level was in err and was reading three (3) feet lower than what the water level was actually at.

13.     On or around the filing of this Complaint, the water level has constantly fluctuated above and below the required elevation level due to constant rain. However, the damage has already been done.[2]

14.     Defendants' application for temporary variance from its license requirement of keeping Cheat Lake at an elevation of no lower than 868 has not been granted.

15.     On September 11, 2024, Defendants actually withdrew their application to FERC for the temporary variance. *See* Exhibit E.

16.     On September 12, 2024, representatives of Defendants sent out an email to stakeholders informing them of drought conditions and explaining their competing FERC requirements.

17.     On the one hand, Defendants are required to keep a 100 cfs minimum flow through the spillway gates when there is no generation.

18.      According to Defendants, when inflow into the lake is less than the required outflow, the lake level will decrease. This would suggest that they cannot keep a 100 cfs minimum inflow and keep the water level above 868, both which are required by their permit.

19.     Defendants were thus faced with Hobson's choice of either increasing the flow through the spillway gates, lowering the water level and harming Plaintiff, or preventing harm to

---

[2] *See* the chart from September 24, 2024, showing the water level below the 868 required feet before the recent rain, attached hereto as Exhibit D.

3

Plaintiff by following the required reservoir elevation level set forth in their permit, but allowing the flow to remain lower.

20.    Defendants did the former, choosing to harm Plaintiff out of retaliation for its outspoken public criticism of their application and failure to maintain and care for Cheat Lake. Defendants began inflow through the spillway gates and announced that the water level will decrease at an estimated rate of two (2) inches per day. *See* Exhibit F. [3]

21.    Plaintiff does not contend that remedying times of drought is unimportant, but seeks to point out that Defendants could have taken a more appropriate route to remedy such drought, yet chose the method that harms Plaintiff rather than the method which would otherwise reflect negatively upon them.

22.    Plaintiff has suffered, and continues to suffer, irreparable harm as a result of Defendants' violation of their FERC permit.

## COUNT I: STRICT LIABILITY

23.    Plaintiff hereby incorporates paragraph 1 through 22 of this Complaint as fully set forth herein.

24.    Defendants have a strict requirement under their FERC permit to keep the water level elevation no lower than 868 feet.

25.    In the months of August and September 2024, without FERC permission, Defendants lowered the water level below the required minimum.

26.    Defendants claim that they did so due to the extreme drought in the area and to maintain compliance with the required downstream minimum flow and DO.

---

[3] This information was also set forth in the September 12, 2024 email, as mentioned above.

27.     Defendants chose to lower water level, or was recklessly indifferent in their maintenance of the water level, in order to remain in good standing with FERC, but ultimately fell short of its minimum reservoir elevation requirement and harmed Plaintiff and other individuals as a result.

28.     The lowering of the water level has, and will continue to have, drastic effects on Plaintiff's and other individual's docks.





**[CONTINUED BELOW]**



29.     Defendants are strictly liable for any harm caused as a result of their failure to comply with their FERC license requirements.

## COUNT II: NEGLIGENCE

30.     Plaintiff hereby incorporates paragraph 1 through 29 of this Complaint as fully set forth herein.

31.     Defendants have a duty, according to its FERC license requirements, to keep the water level elevation no lower than 868 feet.

32.     Defendants also have a duty to inspect, maintain, service, monitor, repair, or otherwise keep their equipment in good order to accurately read water levels.

---

[4] All pictures above show how the lowered water level has, or will in the very near future, break the docks from their land mounts and break the wood on the docks.

33.     Defendants breached that duty by lowering, or allowing the water level to be lowered, below the minimum required elevation without FERC approval and by failing to adequately support and maintain their equipment.

34.     Many boaters had to use the modern facilities of Plaintiff rather than the now inaccessible docks that Defendants were/are required to maintain as a result of such breach.

35.     This breach also caused multiple individuals who could no longer use their docks or the park's docks due to the lower water level to use Plaintiff's docks and other property without permission.

36.     Plaintiffs were damaged as a result of this unapproved use.

37.     Plaintiff sustained other economic and non-economic harm as a result of Defendants' breach.

## COUNT III: BREACH OF CONTRACT

38.     Plaintiff hereby incorporates paragraph 1 through 37 of this Complaint as fully set forth herein.

39.     Defendants were required to keep the water level of Cheat Lake at a minimum of 868 feet via its permit with FERC.

40.     Defendants' permit with FERC acts a contract to adhere to certain standards when completing any projects it carries out.

41.      Plaintiff, as a business owned and operated on or around Cheat Lake is a third-party beneficiary of such a permit in that any action taken by Defendants directly affects Plaintiff.

42.     Defendants, by lowering the water level of Cheat Lake below the required 868 feet elevation, breached their permit.

43.     Plaintiff has suffered harm by way of property, other non-economic, and economic damage as a result of the Defendants' breach of its permit.

## COUNT VI: INJUNCTIVE RELIEF

44.     Plaintiff hereby incorporates paragraphs 1 through 43 of this Complaint as fully set forth herein.

45.     Cheat Lake Marina is entitled to injunctive relief, by way of Preliminary Injunction and Temporary Restraining Order, to prevent the already sustained and imminent irreparable harm that will continue to occur.

46.     The standard for a circuit court to issue a preliminary injunction is as follows:

> The customary standard applied in West Virginia for issuing a preliminary injunction is that a party seeking the temporary relief must demonstrate by a clear showing of a reasonable likelihood of the presence of irreparable harm; the absence of any other appropriate remedy at law; and the necessity of a balancing of hardship test including: (1) the likelihood of irreparable harm to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest.

*Ne. Nat. Energy LLC v. Pachira Energy LLC*, 243 W. Va. 362, 366, 844 S.E.2d 133, 137 (2020).

47.     Cheat Lake Marina's request for Injunctive Relief meets the legal elements necessary for a Preliminary Injunction and Temporary Restraining Order.

**A. Cheat Lake Marina has suffered, and will continue to suffer, irreparable harm without injunctive relief from this Court.**

48.     As a result of the lowered water level, Cheat Lake Marina has faced property damage in multiple forms. Because other individuals are unable to use their own docks and other public docks, they have used, and in doing so damaged, the Plaintiff s docks.

8

49.     As a result of the lowered water level, Plaintiff 's docks have been slowly pulling away from their land mounts, causing irreparable damage.

50.     The pictures shown above in count I were taken nearly a week before the filing of this pleading. If, as estimated by the Defendants themselves, the water level is to lower two (2) inches per day, the damage that would be done to the docks would certainly be significant, boats could not be removed, and if Lake Lynn continued the water level at this low level it will cause the end of this marina.

51.     This is considered irreparable harm under law. *See, e.g.*, *Ne. Nat. Energy LLC v. Pachira Energy LLC*, 243 W. Va. 362, 369, 844 S.E.2d 133, 140 (2020) ("[a]n "irreparable injury" is one that is "actual and imminent" and "it is likely that the [past] offensive conduct will recur"); *Martin v. Martin*, 248 W. Va. 254, 263–64, 888 S.E.2d 434, 443–44 (2023).

52.     As a result, Cheat Lake Marina meets the first requirement for an injunction.

**B.   There is no other remedy at law which could help Cheat Lake Marina here.**

53.     Cheat Lake Marina does not have any other options besides seeking an injunction. While Cheat Lake Marina is seeking a remedy at law, it must act quick in order to prevent further harm to its business.

54.     There is no other remedy other than an injunction to forestall the excessive daily decrease of the water level that would provide adequate remedy and prevent the immediate harm that is occurring, and will continue to occur, at this time.

55.     Cheat Lake Marina therefore meets the second requirement for an injunction.

**C.   The balancing of hardship test militates in favor of Cheat Lake Marina.**

**I.   <u>Balancing of party interests side with Plaintiff</u>**

56.     As above, Cheat Lake Marina has, and will continue to suffer, irreparable injury if the Defendants are allowed to continually lower the water level of Cheat Lake in violation of their FERC permit.

57.     Conversely, the Defendants will not be significantly impaired by this Court forbidding them from doing such. Although it is true that a ruling to this effect would prevent Defendants from being in compliance with the 100 cfs minimum flow level, this does not directly harm Defendants themselves and would prevent considerable harm to Plaintiffs and other businesses and individuals on Cheat Lake.

58.     As a result, the balancing of the parties at interest side with the Plaintiff.

**II.     Cheat Lake Marina is likely to succeed upon the merits**

59.     As apparent through Count I through Count III, there is no doubt Plaintiff would win on the merits in one, if not all, of its theories of liability. Therefore, this element is met.

**III.     The public interest militates in favor of Cheat Lake Marina**

60.     While determining what the "public interest" requires in a case is sometimes difficult, it seems impossible to find that the public interest favors for profit corporations acting in their own interest.

61.     When Lake Lynn filed its application for temporary variance from the reservoir level with FERC, it was met with immediate backlash from business owners and the public at large. Opposers knew the negative impacts that lowering the water level would have on recreational activity, businesses, and the environment on and around Cheat Lake.

62.     That skepticism came into fruition when Lake Lynn, in fact, did lower the water level causing, and continuing to cause, irreparable harm to Plaintiff 's, business owners, and

individuals alike. There is no doubts that the public interest falls in favor of the Plaintiff in this matter.

63.     As a result, all of the factors and elements that are to be considered in granting a preliminary injunction have been met and favor the issuance of these injunctive steps.

64.     The Plaintiff respectfully requests that the Court issue injunction to enjoin and prohibit the Defendants from continuing to violate their FERC permit by lowering the water level of Cheat Lake and harming the Plaintiff.

## **OTHER DAMAGES**

65.     Defendants are fully responsible for any and all damages as set forth in paragraphs 1 through 64 of this Complaint.

66.     Beyond an immediate Preliminary Injunction, Plaintiff seeks damages no greater than $50,000.

**WHEREFORE**, Plaintiff, by and through its undersigned counsel, respectfully request that judgment be entered in its favor, that an immediate Temporary Restraining Order and Preliminary Injunction be entered, and that it be awarded $50,000.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of actions and counts stated herein.

MARINA 1, LLC
By Counsel.

/s/Mark A. Kepple
Mark A. Kepple, Esq.
W.Va. Bar ID # 7470
Bailey & Wyant, P.L.L.C.
1219 Chapline Street
Wheeling, WV 26003
Telephone: (304) 233-3100
Fax: (304) 233-0201
mkepple@baileywyant.com

E-FILED 9/30/2024 9:58 AM
CC-31-2024-C-352
Monongalia County Circuit Clerk
Donna J. Hidock

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

West Penn Power Company                    Project No. 2459—005
                                     West Virginia and Pennsylvania

ORDER ISSUING NEW LICENSE
(MAJOR PROJECT)

INTRODUCTION                    DEC 2 7 1994

On December 20, 1991, West Penn Power Company (WPP) filed an
application under Part I of the Federal Power Act (FPA) for a new
license to continue to operate and maintain the 51.2-megawatt
(MW) Lake Lynn Hydroelectric Project located on the Cheat River,
in Monongalia County, West Virginia, and Fayette County,
Pennsylvania.1/

BACKGROUND

Notice of the application has been published. The following
entities filed timely motions to intervene on the following
dates: the Sierra Club (Monongahela Group), September 24, 1993;
the Cheat Lake Recreation and Environmental Association (CLEAR),
September 27, 1993; the League of Women Voters of Monongahela
County, September 29, 1993; the West Virginia Division of Natural
Resources (WVDNR), September 30, 1993; the West Virginia Division
of Environmental Protection (WVDEP), September 30, 1993. No
organization or individual filed a motion to intervene in
opposition to the project. All comments received have been fully
considered in determining whether, or under what conditions, to
issue this license.2/

On June 24, 1994, the Commission's staff issued a draft
environmental assessment (DEA) for this project. Comments on the

_____

1/   The Cheat River is a tributary of the Monongahela River, a
navigable waterway of the United States. Power produced from the
project is fed directly into an interstate grid. Since the
project is located on a river over which Congress has
jurisdiction under the Commerce Clause, affects interstate
commerce through its connection to an interstate power grid, and
was constructed after 1935, it is required to be licensed
pursuant to Section 23(b)(1) of the FPA.

2/   In addition to the intervenors, the other comments received
were from the U.S. Department of the Interior--Fish and Wildlife
Service (DOI), the U.S. Army Corps of Engineers (COE), the Albert
Gallatin Municipal Authority (AGMA), the Pennsylvania Department
of Environmental Regulation (PDER), the West Virginia University
(WVU) Student Administration, the WVU Sierra Student Coalition,
and local residents.

EXHIBIT
A

950103016(

FERC-DATE ISSUED
DEC 27, 1994

18

and revision of the plan.

The Licensee shall prepare the plan after consultation with the Department of Interior (DOI), the West Virginia Division of Natural Resources (WVDNR), the West Virginia Division of Environmental Protection (WVDEP), and the Pennsylvania Fish and Boat Commission (PFBC). The Licensee shall allow a minimum of 30 days for the agencies to comment and to make recommendations before filing the plan with the Commission. If the Licensee does not adopt a recommendation, the filing shall include the Licensee's reasons, based on geological, soil, and groundwater conditions at the site.

The Commission may require changes to the plan. No land-disturbing or land-clearing activities shall begin until the Licensee is notified by the Commission that the plan is approved. Upon Commission approval, the Licensee shall implement the plan, including any changes required by the Commission.

Article 402. The Licensee shall, within one year of license issuance, complete an initial survey of shoreline erosion along the entire reservoir shoreline. The Licensee shall also conduct: (1) annual follow-up shoreline erosion surveys of the West Penn Beach shoreline area extending from the dam to the Cheat Haven peninsula, and (2) triennial follow-up shoreline erosion surveys (i.e., every 3 years) of the entire reservoir shoreline. The Licensee shall file shoreline erosion survey reports with the Commission describing survey findings and any planned shore protection measures or measures implemented since the last report.

The Licensee shall be fully responsible for funding and implementing appropriate shore protection measures along the West Penn Beach shoreline area extending from the dam to the Cheat Haven peninsula, and for other shoreline areas as required by the Commission. The Licensee shall provide the results of its erosion surveys to WVDNR, other agencies, and property owners upon request.

The Commission may change the schedule for shoreline erosion surveys and reports. The Commission may require changes to the reports. No land-disturbing or land-clearing activities shall begin until the Licensee is notified by the Commission that the reports are approved. Upon Commission approval, the Licensee shall implement the measures stipulated in the reports including any changes required by the Commission.

Article 403. The Licensee shall maintain the project reservoir at a surface elevation between 868 feet National Geodetic Vertical Datum (NGVD) and 870 feet NGVD from May 1 to October 31, between 857 feet NGVD and 870 feet NGVD from November 1 to March 31, and between 863 feet NGVD and 870 feet

NGVD from April 1 to April 30.  The minimum and maximum surface elevations may be temporarily modified if required by operating emergencies beyond the control of the Licensee, and for short periods for project maintenance purposes.  If the reservoir surface elevations are so modified, the Licensee shall notify the Commission and the West Virginia Division of Natural Resources as soon as possible, but no later than 10 days after each such incident.

To ensure compliance with reservoir surface elevation requirements, the Licensee shall install a level monitor in the project reservoir that records reservoir surface elevation hourly.  The Licensee shall provide this data to the Department of Interior (DOI), the West Virginia Division of Natural Resources (WVDNR), the West Virginia Division of Environmental Protection (WVDEP), the Pennsylvania Fish and Boat Commission (PFBC), and the Commission within 30 days of any request.  The Licensee shall submit a report annually to the DOI, WVDNR, WVDEP, PFBC, and the Commission summarizing the reservoir surface elevation data.

Article 404.  The Licensee shall release from the Lake Lynn Hydroelectric Project into the Cheat River a minimum flow of 212 cubic feet per second (cfs), or inflow to the project reservoir, whichever is less--with an absolute minimum release flow of 100 cfs regardless of reservoir inflow, evaporation or other withdrawals.  The Licensee shall maintain the 212 cfs minimum release whenever the reservoir water level (measured hourly per Article 403) is stable or increasing.  When the reservoir water level is decreasing, the Licensee may reduce the minimum release flow by increments of not more than 25 cfs per hour in order to achieve a stable reservoir water level.

The minimum release flow from the dam shall be measured at the U.S. Geological Survey (USGS) gauge to be installed in the area immediately down-stream of the dam (see Article 407).  The reservoir water level shall be measured at the level monitor to be installed in accordance with Article 403.

The minimum release flow may be temporarily modified if required by operating emergencies beyond the control of the Licensee, and for short periods upon agreement between the Licensee and the West Virginia Division of Environmental Protection (WVDEP).  If the flow is so modified, the Licensee shall notify the Commission and the WVDEP as soon as possible, but no later than 10 days after each such incident.

Article 405.  Within 1 year of license issuance, the Licensee shall file with the Commission, for approval, a plan to continuously monitor dissolved oxygen (DO) levels, temperature, pH, and conductivity of the Cheat River in the project reservoir and down-stream of the project.

Case 1:24-cv-00103-TSK   Document 1-2   Filed 11/01/24   Page 21 of 43  PageID #: 44
Document Content(s)

8343997.tif.......................................................1-190

E-FILED | 9/30/2024 11:58 AM
CC-31-2024-C-352
Monongalia County Circuit Clerk
Donna J. Hidock

**LEGAL STATUS**

This site displays a prototype of a "Web 2.0" version of the daily Federal Register. It is not an official legal edition of the Federal Register, and does not replace the official print version or the official electronic version on GPO's govinfo.gov.

The documents posted on this site are XML renditions of published Federal Register documents. Each document posted on the site includes a link to the corresponding official PDF file on govinfo.gov. This prototype edition of the daily Federal Register on FederalRegister.gov will remain an unofficial informational resource until the Administrative Committee of the Federal Register (ACFR) issues a regulation granting it official legal status. For complete information about, and access to, our official publications and services, go to About the Federal Register on NARA's archives.gov.

The OFR/GPO partnership is committed to presenting accurate and reliable regulatory information on FederalRegister.gov with the objective of establishing the XML-based Federal Register as an ACFR-sanctioned publication in the future. While every effort has been made to ensure that the material on FederalRegister.gov is accurately displayed, consistent with the official SGML-based PDF version on govinfo.gov, those relying on it for legal research should verify their results against an official edition of the Federal Register. Until the ACFR grants it official status, the XML rendition of the daily Federal Register on FederalRegister.gov does not provide legal notice to the public or judicial notice to the courts.

**LEGAL STATUS**

# Lake Lynn Generation, LLC; Notice of Application for Temporary Variance Accepted for Filing and Soliciting Comments, Motions To Intervene, and Protests

A Notice by the Federal Energy Regulatory Commission on 07/25/2024

**PUBLISHED CONTENT - DOCUMENT DETAILS**

**Agencies:** Department of EnergyFederal Energy Regulatory Commission
**Agency/Docket Number:** Project No. 2459-285
**Document Citation:** 89 FR 60416
**Document Number:** 2024-16294
**Document Type:** Notice
**Pages:** 60416-60417 (2 pages)
**Publication Date:** 07/25/2024

**PUBLISHED DOCUMENT: 2024-16294 (89 FR 60416)**

**DOCUMENT HEADINGS**

Department of Energy
Federal Energy Regulatory Commission

**EXHIBIT**

**B**

[Project No. 2459-285]

Take notice that the following hydroelectric application has been filed with the Commission and is available for public inspection.

a. *Application Type:* Temporary Variance from Reservoir Elevation.

b. *Project No.:* 2459-285.

c. *Date Filed:* July 16, 2024.

d. *Applicant:* Lake Lynn Generation, LLC.

e. *Name of Project:* Lake Lynn Hydroelectric Project.

f. *Location:* The Lake Lynn Hydroelectric Project is located on the Cheat River in Monongalia County, West Virginia, and Fayette County, Pennsylvania.

g. *Filed Pursuant to:* Federal Power Act, 16 U.S.C. 791(a)-825(r) (https://www.govinfo.gov/link/uscode/16/791).

h. *Applicant Contact:* Joyce Foster, Director of Licensing and Compliance, 7315 Wisconsin Avenue, Ste. 1100W, Bethesda, MD 20814, (804) 338-5110.

i. *FERC Contact:* Zeena Aljibury, (202) 502-6065, *zeena.aljibury@ferc.gov (mailto:zeena.aljibury@ferc.gov).*

j. *Cooperating Agencies:* With this notice, the Commission is inviting Federal, State, local, and Tribal agencies with jurisdiction and/or special expertise with respect to environmental issues affected by the proposal, that wish to cooperate in the preparation of any environmental document, if applicable, to follow the instructions for filing such requests described in item k below. Cooperating agencies should note the Commission's policy that agencies that cooperate in the preparation of any environmental document cannot also intervene. *See* 94 FERC ¶ 61,076 (2001).

k. *Deadline for filing comments, motions to intervene, and protests:* 30 days from the issuance date of this notice by the Commission.

The Commission strongly encourages electronic filing. Please file comments, motions to intervene, and protests using the Commission's eFiling system at *http://www.ferc.gov/docs-filing/efiling.asp (http://www.ferc.gov/docs-filing/efiling.asp)*. Commenters can submit brief comments up to 6,000 characters, without prior registration, using the eComment system at *http://www.ferc.gov/doc-sfiling/ecomment.asp (http://www.ferc.gov/doc-sfiling/ecomment.asp)*. You must include your name and contact information at the end of your comments. For assistance, please contact FERC Online Support at *FERCOnlineSupport@ferc.gov (mailto:FERCOnlineSupport@ferc.gov)*, (866) 208-3676 (toll free), or (202) 502-8659 (TTY). In lieu of electronic filing, you may submit a paper copy. Submissions sent via the U.S. Postal Service must be addressed to: Debbie-Anne A. Reese, Acting Secretary, Federal Energy Regulatory Commission, 888 First Street NE, Room 1A, Washington, DC 20426. Submissions sent via any other carrier must be addressed to: Debbie-Anne A. Reese, Acting Secretary, Federal Energy Regulatory Commission, 12225 Wilkins Avenue, Rockville, MD 20852. The first page of any filing should include the docket number P-2459-285. Comments emailed to Commission staff are not considered part of the Commission record.

The Commission's Rules of Practice and Procedure require all intervenors filing documents with the Commission to serve a copy of that document on each person whose name appears on the official service list for the project. Further, if an intervenor files comments or documents with the Commission relating to the merits of an issue that may affect the responsibilities of a particular resource agency, they must also serve a copy of the document on that resource agency.

I. *Description of Request:* The applicant requests Commission approval for a temporary variance from the reservoir elevation requirements at Lake Lynn. Due to lack of precipitation and low reservoir inflows, the applicant requests to reduce the seasonal minimum allowable reservoir elevation from 868 feet to 865 feet to increase spillway discharge in order to mitigate low tailrace dissolved oxygen levels (DO). When inflow to the reservoir is not equal to the discharge needed to maintain DO concentration in the project tailwater at the minimum standard (5.0 milligrams per liter), the applicant would increase project discharge in 25 cubic feet per second increments and subsequently lower the reservoir elevation below 868 feet but no less than 865 feet. If necessary to minimize the impact of lower reservoir elevations, the applicant proposes to open the winter boat launch at Cheat Lake Park, which allows boat access at lower reservoir elevations. Additionally, the applicant proposes to contact local marinas, post a notice on its public

(□ print page 60417) information website, and provide information to Cheat Lake Environment and Recreation Association and Friends of the Cheat to inform recreation users and shoreline property owners of any expected lower reservoir elevations. The applicant requests the temporary variance to remain into effect until November 1, 2024.

m. *Locations of the Application:* This filing may be viewed on the Commission's website at *http://www.ferc.gov (http://www.ferc.gov)* using the "eLibrary" link. Enter the docket number excluding the last three digits in the docket number field to access the document. You may also register online at *http://www.ferc.gov/docs-filing/esubscription.asp (http://www.ferc.gov/docs-filing/esubscription.asp)* to be notified via email of new filings and issuances related to this or other pending projects. For assistance, call 1-866-208-3676 or email *FERCOnlineSupport@ferc.gov (mailto:FERCOnlineSupport@ferc.gov),* for TTY, call (202) 502-8659. Agencies may obtain copies of the application directly from the applicant.

n. Individuals desiring to be included on the Commission's mailing list should so indicate by writing to the Secretary of the Commission.

o. *Comments, Motions to Intervene, or Protests:* Anyone may submit comments, a protest, or a motion to intervene in accordance with the requirements of Rules of Practice and Procedure, 18 CFR 385.210 (https://www.ecfr.gov/current/title-18/section-385.210), .211, .214, respectively. In determining the appropriate action to take, the Commission will consider all protests or other comments filed, but only those who file a motion to intervene in accordance with the Commission's Rules may become a party to the proceeding. Any comments, protests, or motions to intervene must be received on or before the specified comment date for the particular application.

p. *Filing and Service of Responsive Documents:* Any filing must (1) bear in all capital letters the title "COMMENTS", "PROTEST", or "MOTION TO INTERVENE" as applicable; (2) set forth in the heading the name of the applicant and the project number of the application to which the filing responds; (3) furnish the name, address, and telephone number of the person commenting, protesting or intervening; and (4) otherwise comply with the requirements of 18 CFR 385.2001 (https://www.ecfr.gov/current/title-18/section-385.2001) through 385.2005 (https://www.ecfr.gov/current/title-18/section-385.2005). All comments, motions to intervene, or protests must set forth their evidentiary basis. Any

filing made by an intervenor must be accompanied by proof of service on all persons listed in the service list prepared by the Commission in this proceeding, in accordance with 18 CFR 385.2010 (https://www.ecfr.gov/current/title-18/section-385.2010).

q. The Commission's Office of Public Participation (OPP) supports meaningful public engagement and participation in Commission proceedings. OPP can help members of the public, including landowners, environmental justice communities, Tribal members and others, access publicly available information and navigate Commission processes. For public inquiries and assistance with making filings such as interventions, comments, or requests for rehearing, the public is encouraged to contact OPP at (202) 502-6595 or *OPP@ferc.gov (mailto:OPP@ferc.gov).*

Dated: July 18, 2024.

Debbie-Anne A. Reese,

Acting Secretary.

[FR Doc. 2024-16294 (/d/2024-16294) Filed 7-24-24; 8:45 am]

BILLING CODE 6717-01-P

**PUBLISHED DOCUMENT: 2024-16294 (89 FR 60416)**

E-FILED | 9/30/2024 11:58 AM
CC-31-2024-C-352
Monongalia County Circuit Clerk
Donna J. Hidock

**LEGAL STATUS**

This site displays a prototype of a "Web 2.0" version of the daily Federal ~~Register~~ ████████████ of the Federal Register, and does not replace the official print version or the official electronic version on GPO's govinfo.gov.

The documents posted on this site are XML renditions of published Federal Register documents. Each document posted on the site includes a link to the corresponding official PDF file on govinfo.gov. This prototype edition of the daily Federal Register on FederalRegister.gov will remain an unofficial informational resource until the Administrative Committee of the Federal Register (ACFR) issues a regulation granting it official legal status. For complete information about, and access to, our official publications and services, go to About the Federal Register on NARA's archives.gov.

The OFR/GPO partnership is committed to presenting accurate and reliable regulatory information on FederalRegister.gov with the objective of establishing the XML-based Federal Register as an ACFR-sanctioned publication in the future. While every effort has been made to ensure that the material on FederalRegister.gov is accurately displayed, consistent with the official SGML-based PDF version on govinfo.gov, those relying on it for legal research should verify their results against an official edition of the Federal Register. Until the ACFR grants it official status, the XML rendition of the daily Federal Register on FederalRegister.gov does not provide legal notice to the public or judicial notice to the courts.

**LEGAL STATUS**

# Lake Lynn Generation, LLC; Notice of Application for Temporary Variance Accepted for Filing and Soliciting Comments, Motions To Intervene, and Protests

A Notice by the Federal Energy Regulatory Commission on 07/25/2024

**PUBLISHED CONTENT - DOCUMENT DETAILS**

**Agencies:** Department of EnergyFederal Energy Regulatory Commission
**Agency/Docket Number:** Project No. 2459-285
**Document Citation:** 89 FR 60416
**Document Number:** 2024-16294
**Document Type:** Notice
**Pages:** 60416-60417 (2 pages)
**Publication Date:** 07/25/2024

**PUBLISHED DOCUMENT: 2024-16294 (89 FR 60416)**

**DOCUMENT HEADINGS**

Department of Energy
Federal Energy Regulatory Commission

EXHIBIT

B

[Project No. 2459-285]

Take notice that the following hydroelectric application has been filed with the Commission and is available for public inspection.

a. *Application Type:* Temporary Variance from Reservoir Elevation.

b. *Project No.:* 2459-285.

c. *Date Filed:* July 16, 2024.

d. *Applicant:* Lake Lynn Generation, LLC.

e. *Name of Project:* Lake Lynn Hydroelectric Project.

f. *Location:* The Lake Lynn Hydroelectric Project is located on the Cheat River in Monongalia County, West Virginia, and Fayette County, Pennsylvania.

g. *Filed Pursuant to:* Federal Power Act, 16 U.S.C. 791(a)-825(r) (https://www.govinfo.gov/link/uscode/16/791).

h. *Applicant Contact:* Joyce Foster, Director of Licensing and Compliance, 7315 Wisconsin Avenue, Ste. 1100W, Bethesda, MD 20814, (804) 338-5110.

i. *FERC Contact:* Zeena Aljibury, (202) 502-6065, *zeena.aljibury@ferc.gov* *(mailto:zeena.aljibury@ferc.gov).*

j. *Cooperating Agencies:* With this notice, the Commission is inviting Federal, State, local, and Tribal agencies with jurisdiction and/or special expertise with respect to environmental issues affected by the proposal, that wish to cooperate in the preparation of any environmental document, if applicable, to follow the instructions for filing such requests described in item k below. Cooperating agencies should note the Commission's policy that agencies that cooperate in the preparation of any environmental document cannot also intervene. *See* 94 FERC ¶ 61,076 (2001).

k. *Deadline for filing comments, motions to intervene, and protests:* 30 days from the issuance date of this notice by the Commission.

The Commission strongly encourages electronic filing. Please file comments, motions to intervene, and protests using the Commission's eFiling system at *http://www.ferc.gov/ docs-filing/efiling.asp (http://www.ferc.gov/docs-filing/efiling.asp)*. Commenters can submit brief comments up to 6,000 characters, without prior registration, using the eComment system at *http://www.ferc.gov/doc-sfiling/ecomment.asp (http://www.ferc.gov/doc-sfiling/ecomment.asp)*. You must include your name and contact information at the end of your comments. For assistance, please contact FERC Online Support at *FERCOnlineSupport@ferc.gov (mailto:FERCOnlineSupport@ferc.gov)*, (866) 208-3676 (toll free), or (202) 502-8659 (TTY). In lieu of electronic filing, you may submit a paper copy. Submissions sent via the U.S. Postal Service must be addressed to: Debbie-Anne A. Reese, Acting Secretary, Federal Energy Regulatory Commission, 888 First Street NE, Room 1A, Washington, DC 20426. Submissions sent via any other carrier must be addressed to: Debbie-Anne A. Reese, Acting Secretary, Federal Energy Regulatory Commission, 12225 Wilkins Avenue, Rockville, MD 20852. The first page of any filing should include the docket number P-2459-285. Comments emailed to Commission staff are not considered part of the Commission record.

The Commission's Rules of Practice and Procedure require all intervenors filing documents with the Commission to serve a copy of that document on each person whose name appears on the official service list for the project. Further, if an intervenor files comments or documents with the Commission relating to the merits of an issue that may affect the responsibilities of a particular resource agency, they must also serve a copy of the document on that resource agency.

l. *Description of Request:* The applicant requests Commission approval for a temporary variance from the reservoir elevation requirements at Lake Lynn. Due to lack of precipitation and low reservoir inflows, the applicant requests to reduce the seasonal minimum allowable reservoir elevation from 868 feet to 865 feet to increase spillway discharge in order to mitigate low tailrace dissolved oxygen levels (DO). When inflow to the reservoir is not equal to the discharge needed to maintain DO concentration in the project tailwater at the minimum standard (5.0 milligrams per liter), the applicant would increase project discharge in 25 cubic feet per second increments and subsequently lower the reservoir elevation below 868 feet but no less than 865 feet. If necessary to minimize the impact of lower reservoir elevations, the applicant proposes to open the winter boat launch at Cheat Lake Park, which allows boat access at lower reservoir elevations. Additionally, the applicant proposes to contact local marinas, post a notice on its public

(□ print page 60417) information website, and provide information to Cheat Lake Environment and Recreation Association and Friends of the Cheat to inform recreation users and shoreline property owners of any expected lower reservoir elevations. The applicant requests the temporary variance to remain into effect until November 1, 2024.

m. *Locations of the Application:* This filing may be viewed on the Commission's website at *http://www.ferc.gov (http://www.ferc.gov)* using the "eLibrary" link. Enter the docket number excluding the last three digits in the docket number field to access the document. You may also register online at *http://www.ferc.gov/docs-filing/esubscription.asp (http://www.ferc.gov/docs-filing/esubscription.asp)* to be notified via email of new filings and issuances related to this or other pending projects. For assistance, call 1-866-208-3676 or email *FERCOnlineSupport@ferc.gov (mailto:FERCOnlineSupport@ferc.gov),* for TTY, call (202) 502-8659. Agencies may obtain copies of the application directly from the applicant.

n. Individuals desiring to be included on the Commission's mailing list should so indicate by writing to the Secretary of the Commission.

o. *Comments, Motions to Intervene, or Protests:* Anyone may submit comments, a protest, or a motion to intervene in accordance with the requirements of Rules of Practice and Procedure, 18 CFR 385.210 (https://www.ecfr.gov/current/title-18/section-385.210), .211, .214, respectively. In determining the appropriate action to take, the Commission will consider all protests or other comments filed, but only those who file a motion to intervene in accordance with the Commission's Rules may become a party to the proceeding. Any comments, protests, or motions to intervene must be received on or before the specified comment date for the particular application.

p. *Filing and Service of Responsive Documents:* Any filing must (1) bear in all capital letters the title "COMMENTS", "PROTEST", or "MOTION TO INTERVENE" as applicable; (2) set forth in the heading the name of the applicant and the project number of the application to which the filing responds; (3) furnish the name, address, and telephone number of the person commenting, protesting or intervening; and (4) otherwise comply with the requirements of 18 CFR 385.2001 (https://www.ecfr.gov/current/title-18/section-385.2001) through 385.2005 (https://www.ecfr.gov/current/title-18/section-385.2005). All comments, motions to intervene, or protests must set forth their evidentiary basis. Any

filing made by an intervenor must be accompanied by proof of service on all persons listed in the service list prepared by the Commission in this proceeding, in accordance with 18 CFR 385.2010 (https://www.ecfr.gov/current/title-18/section-385.2010).

q. The Commission's Office of Public Participation (OPP) supports meaningful public engagement and participation in Commission proceedings. OPP can help members of the public, including landowners, environmental justice communities, Tribal members and others, access publicly available information and navigate Commission processes. For public inquiries and assistance with making filings such as interventions, comments, or requests for rehearing, the public is encouraged to contact OPP at (202) 502-6595 or *OPP@ferc.gov (mailto:OPP@ferc.gov)*.

Dated: July 18, 2024.

Debbie-Anne A. Reese,

Acting Secretary.

[FR Doc. 2024-16294 (/d/2024-16294) Filed 7-24-24; 8:45 am]

BILLING CODE 6717-01-P

**PUBLISHED DOCUMENT: 2024-16294 (89 FR 60416)**

EFILED 9/30/2024 9:58 AM
CC-31-2024-C-352
Monongalia County Circuit Clerk
Donna J. Hidock

## UNITED STATES OF AMERICA

## FEDERAL ENERGY REGULATORY COMMISSION

**RE**: Lake Lynn Generation, LLC

**Motion to Intervene of Marina 1, LLC**

Project:

Lake Lynn Hydroelectric Project
Project No. 2459-285

### I.        Introduction

On July 25, 2024, the Federal Energy Regulatory Commission (FERC) issued a notice regarding an application for the Lake Lynn Hydroelectric Project, Project No. 2459-285, on the Cheat River in Monongalia County, West Virginia, and Fayette County, Pennsylvania. In accordance with Rule 214 of FERC's Rules of Practice and Procedure, 18 C.F.R. § 385.214, Marina 1, LLC (d/b/a and hereafter referred to as "Cheat Lake Marina,") moves to intervene in the Lake Lynn Generation, LLC's (hereinafter referred to as "Lake Lynn") application for the purpose of preserving its right to object to efforts by Lake Lynn to lower the water levels of Cheat Lake.

### II.        Statement of Interest

Cheat Lake Marina is a business organization that primarily provides dock rentals, fuel sales, and launching facilities for boats on Cheat Lake. Cheat Lake Marina also houses a restaurant/bar and conference facility. Cheat Lake Marina will be significantly prejudiced by, and is extremely concerned about, the negative impacts that lowering the water level will have on Cheat Lake and the surrounding area as apparently sought by the Lake Lynn Hydroelectric Project.

Particularly, Cheat Lake Marina will suffer greatly from the deleterious impact this project will have on the recreational use of Cheat Lake. Lowering the water levels of Cheat Lake too much will make boat docking almost impossible and even dangerous. Even slight lowering

EXHIBIT

C

of the water levels will have a negative impact on the use of Cheat Lake. Cheat Lake Marina will also suffer from the negative impact that such a project will have on businesses located on Cheat Lake and the surrounding area. Likewise, Cheat Lake Marina seeks to make this Commission aware of the significant effect that this project will have on the environment and wildlife in the area. Cheat Lake Marina undoubtably has an interest in keeping the water levels of Cheat Lake at a reasonable level to prevent the aforementioned negative impacts from occurring.

### III.   Grounds for Intervention

Cheat Lake Marina's intervention in the Lake Lynn Hydroelectric Project application process is necessary to protect their interest as a business/consumer on Cheat Lake and the surrounding area pursuant to 18 C.F.R. § 385.214(b)(2)(ii). Cheat Lake Marina is the only party which can protect its own interest as a business owner and consumer affected by such a project.

Also, Cheat Lake Marina seeks to protect the public interest, as required by 18 C.F.R. § 385.214(b)(2)(iii). According to their current knowledge on the matter, no other party in the proceeding would be able to adequately protect the public's interest in preventing the negative implications that this project will have on Cheat Lake. Therefore, Cheat Lake Marina has a direct interest in the outcome of this application process which is sufficient ground for intervention.

### IV.   Statement of Position

Cheat Lake Marina wishes to express to the Commission the importance of the current water level of Cheat Lake. Particularly, lowering the water level of Cheat Lake will have a deleterious impact on the recreational use of Cheat Lake and on business owners in the region. Also, lowering the water level of Cheat Lake will significantly impact the environment and wildlife in the area. This is more fully flushed out below.

**A. Lowering the water level of Cheat Lake will have a deleterious impact on the recreational use of Cheat Lake and to business owners located on the Lake.**

It is paramount that Cheat Lake be maintained for the purposes of recreation and lowering the water level of Cheat Lake will negatively impact this function.

Cheat Lake is used for a variety of different recreational activities by residents of the Cheat Lake Community, tourists, charitable organizations, and environmental advocates. Lowering the water level will affect their ability to use the lake for such activities. Specifically, boating activities will become dangerous. Presently, Lake Lynn has failed to dredge the lake and remove tree limbs and logs partially submerged. Boating docks will be "too high," making commercial and residential use impossible. Despite the "alternative of using a winter boat ramp," this ramp is an inadequate alternative that cannot withstand the large number of people who use Cheat Lake. As other comments have objected, this ramp was not meant to provide everyday access to a multitude of people which the summer months bring. That is why it is designated as a "winter" boat ramp, when less boating is set to occur and is in use only from November to April. Not to mention the parking restrictions and limited space that come along with this alternative.

Residents of Cheat Lake will be directly impacted in their use and enjoyment. In addition to the boating experience, lowering the water levels will have a grave impact on the residents' ability to use their property to fish, swim, or enjoy any other recreational activities that the Lake, at a proper level, offers. Residents will be forced to relocate for these activities. Residents of the area have spent hundreds of thousands of dollars on properties on or near the lake for the primary reason of using the lake for recreational activities. Enabling the water to be lowered by as much as three (3) feet, would negatively impact property owners in the community.

Furthermore, any lowering of the water levels of Cheat Lake will have a trickle-down effect that will certainly create negative impacts on business owners in the area. With less ability to use

Cheat Lake for recreational activities comes less patronage and less people. Summer is when Cheat Lake thrives and businesses in the area depend upon the lake's ability to draw in consumers. Lowering the water levels of Cheat Lake will make certain businesses inaccessible and less desirable. Revenue of local restaurants, shops, hotels, and any other summer-based activities will decline as an effect of lesser amount of people enjoying the lake. Closing of the parks and beaches at the lake will occur and be devastating to the area. Businesses, beaches, and parks will ultimately be forced to close, yet again taking away from the ambiance of Cheat Lake.

**B. The environmental and wildlife impact which this would cause is paramount.**

In addition to the deleterious impact that lowering the water levels of Cheat Lake will have on recreational activities and business owners, the impact on the environment and wildlife in the area cannot be ignored. Constant raising and lowering of water levels will have a huge impact on the environment in the region. Lowering the water level would have a grave impact on wildlife and fishing habitations. If water levels drop below the optimal range, various different species will be required to relocate to worse habitat conditions. Indeed, such a lowering would disrupt or possibly displace wildlife, having an ancillary impact on the environment in the region.

Cheat Lake Marina seeks to be informed regarding any progress, updates, or filings made in this case by the applicant. This request includes being added to all official service and mailing lists regarding the above application. Please send such information to the following contact:

/s/ Mark A. Kepple
Mark A. Kepple, Esq.
W.Va. Bar ID # 7470
Bailey & Wyant, P.L.L.C.
1219 Chapline Street
Wheeling, WV 26003
Telephone: (304) 233-3100
Fax: (304) 233-0201
mkepple@baileywyant.com

**UNITED STATES OF AMERICA**

**FEDERAL ENERGY REGULATORY COMMISSION**

**RE**: Lake Lynn Generation, LLC                    Project:

                                                     Lake Lynn Hydroelectric Project
**Motion to Intervene of Marina 1, LLC**             Project No. 2459-285


**CERTIFICATE OF SERVICE**

Service of the foregoing **Motion to Intervene of Marina 1, LLC**  was  served  upon  all counsel parties by CM/ECF service, this 22 day of August 2024:

Duane Nichols
CLEAR President
330 DREAM CATCHER CIR
MORGANTOWN, WEST VIRGINIA 26508
UNITED STATES
Nichols330@gmail.com

Joyce Foster
Director, Licensing and Compl.
Lake Lynn Generation, LLC
7315 WISCONSIN AVE
SUITE 1100W
BETHESDA, MARYLAND 20814
UNITED STATES
joyce.foster@eaglecreekre.com

Jody Smet
VP Regulatory Affairs
Lake Lynn Generation, LLC
7315 Wisconsin Avenue
Suite 1100W
Bethesda, MARYLAND 20814
jody.smet@eaglecreekre.com

Ella Belling
Director, Monongahela River Tr
Monongahela River Trails Conservancy
PO BOX 282
MORGANTOWN, WEST VIRGINIA 26507
UNITED STATES

ella@montrails.org

CHARLES B FELTON, DIR.
West Virginia Division of Natural Resources
1800 Washington St E
Charleston, WEST VIRGINIA 253052210

ADAM POLINSKI
PRESIDENT
COOPERS ROCK FOUNDATION
PO Box 505
Morgantown, 26507-0505
Monongalia

/s/ Mark A. Kepple
Mark A. Kepple, Esq.
WV Bar ID # 7470

monitoring-location/03071590/#parameterCode=62614&period=P7D&showMedian=true

nt  Here's how you know ✓

er Data and Tools ✓     Data Inventory ✓     Connect ✓



**IMPORTANT**  Legacy real-time page  ℹ️

○ 7 days   ○ 30 days   ○ 1 year                    Scale  **Linear**  Log

# Cheat Lake Near Stewartstown, WV - 03071590
### September 17, 2024 - September 24, 2024
### Lake or reservoir water surface elevation above NGVD 1929, feet



**864.82 ft - Sep 24, 2024 10:30:00 AM EDT**

┌──────────────────┐
│   **EXHIBIT**    │
│                  │
│      **D**       │
│   _____    │
└──────────────────┘

**IMPORTANT**  Data may be provisional

**Show legend** ✓

Questions or Comments

E-FILED | 9/30/2024 9:58 AM
CC-31-2024-C-352
Monongalia County Circuit Clerk
Donna J. Hidock



# Lake Lynn Generation, LLC

c/o Eagle Creek Renewable Energy, LLC
7315 Wisconsin Avenue, Suite 1100W
Bethesda, Maryland 20814
240.482.2700

**VIA ELECTRONIC-FILING**

September 11, 2024

Debbie-Anne Reese, Acting Secretary
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426

Re:   Lake Lynn Hydroelectric Project (FERC No. P-2459-285)
        License Article 403 Reservoir Surface Elevation – Request for Temporary Variance

Dear Secretary Reese:

On July 16, 2024[1], as supplemented on July 24, 2024[2], Lake Lynn Generation, LLC (Lake Lynn), licensee for the Lake Lynn Hydroelectric Project (Project, FERC No. P-2459), filed with the Federal Energy Regulatory Commission (FERC or Commission) a request for a temporary variance from Article 403 of the Project FERC License which requires that the Project reservoir be maintained at an elevation between 868 and 870 feet NGVD from May 1 to October 31. The Commission issued a public notice of the temporary variance request on July 18, 2024, and, on September 6, requested a significant amount of additional information from Lake Lynn within 10 days to support the temporary variance request.

Lake Lynn has worked diligently since July to comply with competing license requirements despite low inflows into the Project reservoir, and extreme heat and drought conditions throughout West Virginia. Even during the challenging weather conditions this summer, Lake Lynn has only had two minor (in magnitude and duration) deviation events this summer (for tailwater dissolved oxygen (DO)) and deviation reports were filed timely[3].

In addition to the Article 403 reservoir elevation requirements, Article 404 of the Project License requires that Lake Lynn release from the Project a minimum flow of 212 cubic feet per second (cfs), or inflow to the Project reservoir, whichever is less, with an absolute minimum flow of 100 cfs regardless of inflow. Article 406 of the Project License and FERC's Order Modifying and Approving the Water Quality Monitoring Plan dated August 20, 1996, require Lake Lynn to maintain a minimum DO of 5.0 mg/L (this is an instantaneous standard water quality standard) in the Project tailwater. The FERC license does not prioritize any of these requirements, but it is difficult, if not impossible, for Lake Lynn to comply with the competing requirements during extremely hot and dry periods.

---

[1] FERC Accession Number 20240716-5112
[2] FERC Accession Number 20240724-5017
[3] FERC Accession Numbers 20240719-5168 and 20240814-5102

**EXHIBIT**

**E**

Lake Lynn prioritizes complying with its license requirements over generation. Due to the continued low inflow into the Project reservoir, Lake Lynn has not operated the Project, resulting in lost generation, since July 5, 2024, except for the following special circumstances: the evening of August 9 through the morning of August 13, in anticipation of forecasted precipitation from Hurricane Debby remnants, and on August 29 for two hours for a required capacity test for PJM, the regional transmission organization (RTO), which is required every year between June 1 and August 31. Due to low inflow for most of the summer, Lake Lynn postponed the PJM required capacity test as long as possible. Cheat Lake remained above the summer pool elevation (868-ft) during both periods of generation noted above.

West Virginia and the Cheat River watershed have been experiencing drought conditions. The U.S. Drought Monitor[4] is currently reporting the drought severity level of Monongalia County, the county in which Cheat Lake is located, as a "Severe Drought (D2)." In West Virginia, examples of historically observed impacts during Severe Drought D2 include the following: fish kills; wildlife move to farms for food; golf courses conserve water; poor water quality; groundwater is declining; irrigation ponds are dry; outdoor water restrictions are implemented.[5] The U.S. Drought Monitor is currently reporting that the watershed upstream of Cheat Lake as "Severe Drought (D2)" and "Extreme Drought (D3)."

Given the extreme temperatures and limited precipitation this summer, Cheat Lake is not the only reservoir in West Virginia experiencing low inflows. Other reservoirs across West Virginia, including Summersville Lake, Tygart Lake, Stonewall Jackson Lake, and Sutton Lake, have experienced significant drawdowns before Labor Day due to drought conditions. Some of these drawdowns have been a foot or more beginning as early as July or early August.

At some hydropower projects, there is a low inflow protocol that clearly defines water management during periods of drought. Since there is not a similar protocol at Lake Lynn, during similar low inflow situations since 2019, the Resource Agencies and FERC have prioritized aquatic health through minimum flows and DO in the tailwater downstream of the Project. Lake Lynn's temporary variance request was intended to clearly establish how competing license requirements would be prioritized, with any reduction in reservoir level only being implemented if necessary and only to the extent needed to maintain compliance with the required downstream minimum flow and DO. Although Lake Lynn received support originally for the variance request from WVDEP, WVDNR, USFWS and PAFBC, WVDEP and WVDNR recently withdrew their support for the variance request.

Given the significant effort that would be required to respond to the Commission's September 3 additional information request and that the period of typical low DO is almost over, Lake Lynn hereby respectfully withdraws its request for a temporary license variance. Lake Lynn will continue to comply with the competing license requirements to the best of its ability.

Now that it is after Labor Day, Lake Lynn anticipates cooler temperatures will soon alleviate DO issues at the Project and recreational boating will decrease, and we remain hopeful that there will be meaningful precipitation in the watershed in the near future. The National Weather Service Climate Prediction Center's 8-14 Day Precipitation Outlook[6] is currently showing near normal precipitation in the Cheat Lake watershed. If Lake Lynn is in a situation where it cannot meet all license requirements, Lake Lynn will

---

[4] https://droughtmonitor.unl.edu/CurrentMap/StateDroughtMonitor.aspx?WV
[5] https://droughtmonitor.unl.edu/CurrentMap/StateDroughtMonitor.aspx?WV
[6] https://www.cpc.ncep.noaa.gov/products/predictions/814day/



prioritize the required minimum flow and file deviation reports with the Commission and Resource Agencies as required by the FERC license and the FERC-approved Water Quality Monitoring Plan for lake level and/or DO deviations.

To help remedy the competing license requirements in the future, Lake Lynn has proposed, in its Final License Application for the Project relicensing, to develop an Operation Plan for the Project that will include standard operating procedures to be implemented during periods of low inflow and low dissolved oxygen, which will document the prioritization of license requirements and how Lake Lynn will comply with the operational requirements of the license.

Lake Lynn also notes that it monitors lake elevation using the USGS gage 03071590 (Cheat Lake Near Stewartstown, WV). Lake Lynn recently became aware of an issue with lake elevation reported on the USGS site on August 27, 2024, when the USGS gage was reporting elevations about 3 feet lower than the actual lake elevation. Upon investigation, Lake Lynn discovered a crack in the stilling well where the USGS gage measuring equipment is located. Lake Lynn worked with the USGS over the past two weeks to relocate the USGS equipment and return the USGS gage to service. The USGS removed the erroneous data from its site and recalibrated its equipment on September 10, 2024.

Please reach out to me at joyce.foster@eaglecreekre.com or 804-338-5110 if you have any questions regarding our request to withdraw our request for a temporary license variance.

Sincerely,

Joyce Foster

Joyce Foster
Director Licensing and Compliance

cc:     Nancy Dixon, WVDEP
        Danny Bennett, WVDNR
        David Wellman, WVDNR
        Drake Propson, WVDNR
        Garret Kratina, PAFBC
        Heather Smiles, PAFBC
        Matthew Bearden, USFWS



EFILED 9/30/2024 11:58 AM
CC-31-2024-C-352
Monongalia County Circuit Clerk
Donna J. Hidock

# Cheat Lake Today

Everything you need to know

Home    Lake Lynn    Recreation    Safety    Statistics    Contact Us    Relicensing

Shoreline Management

---

Home › Recreation

# Recreation

## News and Notices:

Public Access Notice (9/24/2024): The public boat ramp at Sunset Beach is currently nonoperational since the lake elevation is below 866 feet. Please check the home page for the current lake level. The winter boat ramp at Cheat Lake Park is open and available for boat removal.

Public Access Notice (9/18/2024): The public boat ramp at Sunset Beach is currently open and operational. It will become usable at an elevation of 866 feet. Please check the home page for the current lake level. Additionally, the winter boat ramp is also open and available for boat removal.

Lake Level Notice Updated (9/16/2024): West Virginia and the Cheat River watershed have been experiencing drought conditions. The U.S. Drought Monitor is currently reporting the drought severity level of Monongalia County as a "Severe Drought (D2)." In West Virginia, examples of historically observed impacts during Severe Drought D2 include the following: fish kills; wildlife move to farms for food; golf courses conserve water; poor water quality; groundwater is declining; irrigation ponds are dry; outdoor water restrictions are implemented.

Cheat Lake is currently experiencing extremely low inflows as measured at USGS Gage 03069500. Per Lake Lynn Generation's FERC license, a 100 cfs minimum flow is required through the spillway gates when there is no generation. When inflow into the lake is less than the required outflow, the lake level will decrease. We are currently estimating that Cheat Lake elevation will decrease at a rate of approximately 2 inches per day, assuming no withdrawals from adjacent land users and no significant precipitation. Two 2 inches may appear to be more in shallower areas.

Current lake elevation information is available at Cheat Lake Today and at the USGS Gage 03071590 (use NGVD 1929 as the datum). You can sign up for lake level alerts from the USGS gage here.

Updates will be provided here as conditions materially change.

**EXHIBIT**

**F**

**UPDATE:  Lake Lynn Recreation Plan**

In accordance with the FERC Project License, Lake Lynn Generation, LLC submitted an update of the Lake Lynn Recreation Plan to FERC in 2021. Click here to read or download a copy.

## Park & Trail Information

On June 7, 2000, Allegheny Energy dedicated a new recreation spot in Monongalia County, W.Va., as a symbol of its commitment to the environment and the community. Located adjacent to its Lake Lynn Power Station and overlooking the picturesque Cheat Lake, Cheat Lake Park and Trail is a first-class facility that can be enjoyed by families from across the region.

In the 1920s, this 20-acre site was known as West Penn Beach, and employees were able to rent company-owned vacation cottages overlooking the lake. Today, visitors to the facility are welcome to bike or enjoy a nature walk along the 4.5-mile trail.The 12-foot-wide, handicapped accessible trail follows the Lake Lynn shoreline along an abandoned railroad right-of-way leading to a nature viewing area at the southern tip and a fishing platform near the station at the northern tip. To conserve, protect, and enhance the fishing area, we have partnered with the Department of Natural Resources to place recycled Christmas trees at the embayments and in the lake to provide a natural habitat for the fish. We also carefully monitor water quality in the lake, below the dam, and at Point Marion. Other attractions at Cheat Lake Park and Trail include a children's play area, picnic sites, boat docking facilities, and a free motor boat launch at the Sunset Marina. Our policy is to share our land resources with the public at locations suitable for such purposes. And we play a leading role in ensuring that these areas are compatible with the environment.

## Directions to Cheat Lake Park & Trail

**From the North:** Travel south on US 119 to Uniontown. Just south of Uniontown, Pa., take the Morgantown exit from US 119 to PA 43 South. PA 43 is a toll road requiring 75 cents. It terminates near Gans, Pa. At the last exit of PA 43, turn left toward PA 857.  Turn right on PA 857and follow into WV to Morgan Run Road. (Watch for Morgan Run Road after you pass the very sharp hair-pin turn at Darnell Hollow on PA 857.)  Turn right on Morgan Run Road. It is a very narrow road that becomes a one-lane road at some locations. Watch for the one-lane bridge. Morgan Run Road terminates at Cheat Lake Park.

**From the South:** Take the Cheat Lake exit from US I-68. Turn left on WV 857 to Morgan Run Road, then turn left onto Morgan Run Road.  It is a very narrow road that becomes a one-lane road in some locations. Watch for the one-lane bridge. Morgan Run Road terminates at Cheat Lake.

© 2024 Lake Lynn Generation, LLC        Disclaimer