```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**MARINA 1, LLC**
**d/b/a CHEAT LAKE MARINA**,

      **Plaintiff,**

  v.                                        **CIVIL NO. 1:24-CV-103**
                                                          **(KLEEH)**

**LAKE LYNN GENERATION, LLC,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND**
**[ECF NO. 12] AND GRANTING MOTION TO DISMISS [ECF NO. 13]**

Pending before the Court are a motion to remand and a motion to dismiss. For the reasons discussed below, the motion to remand is **DENIED,** and the motion to dismiss is **GRANTED.**

### I.   PROCEDURAL HISTORY

Plaintiff Marina I, LLC, doing business as Cheat Lake Marina ("Cheat Lake Marina"), brought this action against Defendant Lake Lynn Generation, LLC ("Lake Lynn"). Cheat Lake Marina asserts state law claims of strict liability, negligence, and breach of contract, all stemming from Lake Lynn's alleged failure to maintain the minimum water level of Cheat Lake. The minimum water level requirement is derived from Lake Lynn's license with the Federal Energy Regulatory Commission ("FERC").

On September 30, 2024, Cheat Lake Marina filed the original complaint in the Circuit Court of Monongalia County, West Virginia.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND [ECF NO. 12] AND GRANTING MOTION TO DISMISS [ECF NO. 13]**

On November 1, 2024, Lake Lynn removed the action to this Court. On November 25, 2024, Cheat Lake Marina filed an amended complaint, and on November 27, 2024, it filed a motion to remand. On December 9, 2024, Lake Lynn filed a motion to dismiss. The motions are fully briefed and ripe for review.

On May 8, 2025, the Court held a hearing on the motions. The Court ordered the parties to file supplemental briefs on the effect, if any, of 16 U.S.C. § 825p on the motion to remand. The parties did so. Cheat Lake Marina then filed a supplemental exhibit, and Lake Lynn filed a notice of supplemental authority, attaching a related FERC finding from July 30, 2025.

## II. FACTUAL BACKGROUND

Cheat Lake Marina is a commercial enterprise that operates boat docks along the shores of Cheat Lake in Monongalia County, West Virginia. Memo. in Supp. of Mot. to Dismiss, ECF No. 14, at 1. Lake Lynn operates a hydroelectric dam on Cheat Lake. Id. at 3. Lake Lynn is a FERC-regulated entity and must operate in compliance with its FERC-issued license. Id. Relevant here are three requirements imposed upon Lake Lynn by the FERC license: (1) Lake Lynn must maintain the water level of Cheat Lake between 868 feet and 870 feet during the months of May through October; (2) Lake Lynn must maintain a flow rate of 212 cubic feet per

second into the Cheat River, with a minimum of 100 cubic feet per second; and (3) Lake Lynn must maintain a dissolved oxygen concentration of at least 5.0 milligrams per liter in the water leaving the dam. Id. at 3-4.

During the summer of 2024, Monongalia County experienced severe drought conditions. Id. at 4. Lake Lynn asserts that during the extended drought conditions, it was impossible to maintain the minimum reservoir water elevation level while simultaneously maintaining downstream water quality requirements. Id. Lake Lynn's FERC license recognizes that environmental exigencies beyond Lake Lynn's control may arise, and the license permits latitude with respect to the reservoir's water elevation level. See License, ECF No. 13-1, at 19 ("The minimum and maximum surface elevations may be temporarily modified if required by operating emergencies beyond the control of the Licensee[.]"). The FERC license does not provide similar latitude with respect to the dissolved oxygen requirement. Memo. in Supp. of Mot. to Dismiss, ECF No. 14, at 4-5 (citing License, ECF No. 13-1, at 21).

On June 16, 2024, despite the latitude available in the FERC license, Lake Lynn applied with FERC for a temporary variance from its reservoir water elevation requirement. Resp. to Mot. to Dismiss, ECF No. 21, at 3. On August 22, 2024, Cheat Lake Marina

filed an intervention with FERC, opposing the application. Id. From the end of July to the end of August, multiple individuals and businesses submitted comments opposing Lake Lynn's application, citing the anticipated detrimental effects of a lower water level on commercial and recreational use of Cheat Lake. Id. Around the time of Labor Day 2024, Lake Lynn lowered the water level, choosing to prioritize the downstream water quality. Id.

On September 11, 2024, Lake Lynn withdrew its application for a variance. Id. On September 12, 2024, representatives of Lake Lynn sent an email to stakeholders, informing them of Lake Lynn's competing obligations under the FERC license. Id. Lake Lynn was forced to choose between (1) increasing the flow through the spillway gates, which would lower the reservoir level and harm Cheat Lake Marina, and (2) maintaining the reservoir level but providing less flow through the spillway, which would harm the downstream ecosystem. Am. Compl., ECF No. 9, at ¶ 18. Lake Lynn informed the stakeholders that the water level would decrease approximately two inches per day. Id. ¶ 19. Cheat Lake Marina argues that Lake Lynn "ultimately chose to harm [it], perhaps in retaliation against [Cheat Lake Marina's] outspoken public criticism of Lake Lynn's application and failure to maintain and care for Cheat Lake." Resp. to Mot. to Dismiss, ECF No. 21, at 4.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND [ECF NO. 12] AND GRANTING MOTION TO DISMISS [ECF NO. 13]**

Approximately one year later, on July 30, 2025, FERC found that Lake Lynn did not violate its license when it prioritized the dissolved oxygen level during the summer of 2024. See Def. Supp., ECF No. 38.

Cheat Lake Marina seeks compensation for property damage caused by Lake Lynn's lowering of the water level, which Cheat Lake Marina contends violated the FERC license. Am. Compl., ECF No. 9, at ¶¶ 44, 45. Specifically, Cheat Lake Marina asserts claims of strict liability in Count One, negligence in Count Two, and breach of contract in Count Three. In support of Count One, Cheat Lake Marina cites Lake Lynn's "strict requirement under its FERC license to keep the water level elevation no lower than 868 feet." Id. ¶ 24. In support of Count Two, it cites Lake Lynn's "duty, as expressed by the requirements of its FERC license, to keep the water elevation no lower than 868 feet." Id. ¶ 31. In support of Count Three, it argues that Lake Lynn's "license with FERC acts as a contract" and that Cheat Lake Marina is a third-party beneficiary to it. Id. ¶¶ 41, 42.

### III. STANDARD OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows the Court to dismiss an action for lack of jurisdiction over the subject matter. A plaintiff bears "the burden of proving that

subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted). In considering a motion to dismiss pursuant to Rule 12(b)(1), the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. (citation omitted). The court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citation omitted). When a defendant asserts multiple defenses, "questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (citations and quotation marks omitted).

## IV. DISCUSSION

The Federal Power Act ("FPA") empowers FERC to issue licenses in the interest of developing hydroelectric power. See 16 U.S.C. § 797(e). As part of the licensing process, FERC is tasked with balancing the interests of power generation and environmental quality. See id. FERC has the authority to place conditions on the operations of its licensed facilities. See id.; 18 C.F.R. § 12.4(b)(2)(iv) (permitting FERC to place conditions on a license

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND  
[ECF NO. 12] AND GRANTING MOTION TO DISMISS [ECF NO. 13]**

"with respect to the design, construction, operation, maintenance, repair, use, or modification of the project"). In this area, the Supreme Court has acknowledged that FERC plays a "broad and paramount federal regulatory role." See California v. FERC, 495 U.S. 490, 499 (1990).

Pursuant to 16 U.S.C. § 825l(b), when FERC exercises its exclusive authority to issue a license, that license, along with the terms and conditions therein, are only reviewable by federal courts of appeal. See 16 U.S.C. § 825l(b). A district court has no power to "invalidate or rescind" any FERC action "in a matter which Congress has committed to [FERC's] exclusive jurisdiction." Cnty. of Halifax ex rel. Bd. of Supervisors v. Lever, 718 F.2d 649, 654 (4th Cir. 1983). In deciding whether an action is an impermissible collateral attack on a FERC license, "courts must review the substance of an action," and "a plaintiff cannot avoid section [825l] through artful pleading[.]" See Sauk-Suiattle Indian Tribe v. City of Seattle, 56 F.4th 1179, 1188 (9th Cir. 2022) (citation omitted).

In Simmons v. Sabine River Authority Louisiana, the plaintiffs brought a negligence claim, alleging that the defendant caused flooding and erosion on their properties after opening the spillway gates of a dam. 732 F.3d 469, 472 (5th Cir. 2013). The

United States Court of Appeals for the Fifth Circuit affirmed the district court's dismissal of the claim, concluding that "the FPA preempts property damage claims based in state tort law where the alleged damage is the result of 'negligently' operating in compliance with a FERC-issued license." Id. at 474.  The court found that "[p]ermitting . . . state property damage claims in an attempt to force changes to a FERC-issued license would constitute a veto of the project that was approved and licensed by FERC." Id. at 477 (citing California, 495 U.S. at 507) (quotation marks omitted).

Here, Cheat Lake Marina moves to remand the case to the Circuit Court of Monongalia County, arguing that no federal question is presented.[1]  Lake Lynn argues — with respect to both the motion to remand and the motion to dismiss — that FERC has exclusive jurisdiction over the issues raised because they are, in effect, a collateral attack on the FERC license.  More specifically, Lake Lynn argues that it did not violate the FERC license.  Lake Lynn claims that when faced with severe drought conditions, it complied with the FERC license by prioritizing the downstream environment rather than the water level.  FERC has now

---

[1] The parties agree that diversity jurisdiction does not exist but disagree as to whether a federal question exists.

confirmed that Lake Lynn's actions did not violate the license. See Def. Supp., ECF No. 38. Because the issues in the motion to dismiss and the motion to remand overlap, the Court will consider the motions together.

Given FERC's findings, the Court agrees with Lake Lynn that Cheat Lake Marina's claims amount to a collateral attack on the FERC license. Cheat Lake Marina's theories of liability are dependent upon a finding that Lake Lynn, when faced with severe drought conditions, should have prioritized the water level instead of the downstream water quality. FERC has already rejected this contention, finding that Lake Lynn's actions were permissible under the license. Essentially, Cheat Lake Marina is asking the Court to rewrite the terms of the FERC license in a way that would force Lake Lynn to prioritize the water level. As discussed above, only FERC or a federal court of appeal could grant that relief. See 16 U.S.C. § 825l(b). As was the case in Simmons, the alleged property damage stems from action that complied with a FERC-issued license. See 732 F.3d at 474. Accordingly, Cheat Lake Marina's claims amount to a collateral attack on the FERC license, and this Court lacks jurisdiction over the claims.

## V. CONCLUSION

For the reasons discussed above, the motion to remand is **DENIED** [ECF No. 12], and the motion to dismiss is **GRANTED** [ECF No. 13]. This action is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction and **STRICKEN** from the Court's active docket.

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: September 22, 2025

_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA